In the UNITED STATES COURT of the DISTRICT of COLUMBIA

ALI SHUKRI AMIN, Plaintiff-Petitioner proceeding pro se;

v.

The Petitioner's Legal Detaining Custodians:

WILLIAM P. BARR, Sitting United States Attorney General;

JOHN DOE, Chief Deputy Attorney General of District;

JOHN DOE, Chief Executive of the Bureau of Prisons, and;

JOSEPH WILMER, Residential Re-Entry Center Director.

Defendants, in their personal capacities. Attorneys unknown.

Case: 1:19−cv−03418
Assigned To : Contreras, Rudolph
Assign. Date : 11/7/2019
Description: HABEAS CORP/2255 (G−DECK)

_____
(To be provided by the clerk of court)
DEMAND for JURY TRIAL

Crim. No. 1:15-cr-00164-CMH-1

◦ Basis of Jurisdiction: Federal Question
◦ Nature of Suit: 530 Habeas Corpus - General
◦ Original Proceeding

PETITION for WRIT of HABEAS CORPUS by a PERSON DETAINED in FEDERAL CUSTODY pursuant to [28 USC section 2241]

1. COMES NOW the petitioner, ALI SHUKRI AMIN, acting in proper person. Hereinafter he is referred to as "the petitioner" or "the plaintiff" and he presents: a "Petition for Writ of Habeas Corpus by a Person Detained in Federal Custody pursuant to [28 USC section 2241]." It is designed to test the legality of the petitioner's detention.

DECLARATORY CERTIFICATE of DELIVERY and SERVICE

1. I, _ALI SHUKRI AMIN_, hereby certify, affirm, and declare, in proper person, under the penalty of perjury pursuant to [29 USC section 1746] that the following stated herein below is true, correct, and complete - to the best of his knowledge, understanding, and belief. By signing below, I affirm that: this motion/complaint complies with the requirements of the [Federal Rule of Court Procedure 11]. To the best of my information and knowledge, I certify that it is not presented for any improper purpose. It is supported by meritorious arguments of law and the factual contentions presented have evidentiary support, or, if found to be deficient, will likely to be identified to have evidentiary support after reasonable opportunity for investigation.

2. The petitioner has presented a copy of this "Declaratory Certificate of Delivery and Service" to an officer of the Federal Bureau of Prisons, a subdivision of the Department of Justice. As such, it is a truly served copy. [Federal Rule of Civil Procedure 5(b)], [Federal Rule of Appellate Procedure 25(A)(iii)], [Fed. R. App. P. 29], and the [Supreme Court Rules] all indicate that: service and filing are perfected on the day that the movant/petitioner submits his documents to an officer of the Bureau of Prisons to be placed in outgoing mail. It is filed at the time delivered to prison authorities for forwarding to the court [Houston v. Lack, 101 L. Ed. 2d 245 (1988)]. That service includes the court and the parties to litigation.

3. All of this was accomplished by placing the documents in a sealed, postage-paid, envelope, then depositing it in the United States Postal Mail at the facility designated below.

x _____ , Pro Se

Signed on 11 / 5 /2019

Name: Ali ShuKri Amin
Inmate ID # 85384 -083
USP / FCC / FCI / FDC (RRC) (Circled) Hope Village Inc.
2844 Langston Pl. SE
Washington , DC 20020

#justice4all

# TABLE of CONTENTS

## PART I

I . Preamble

II . Introduction

III . Background

IV . Presumptions Underlying Detention

V . Claim Statement

VI . Relief Requested

VII . The Branches of Government

VIII . Jurisdiction

IX . Statutory Habeas Corpus Basis

X . Venue

XI . Judicial Indisputability of Fact and Law

## PART II

XII . Executive Authority to Detain the Petitioner

XIII . Federal Criminal and Territorial Jurisdiction

XIV . Subject-Matter Jurisdiction

XV . Case Precedent Subversion of the Constitution and Laws

XVI . Incentive to Incarcerate Petitioner Illegally

## PART III

XVII . Verified Material Facts Statement

XVIII . Presumption of Petitioner's Actual Innocence

XIX . Exhibits

I . 1

PART I

I . PREAMBLE

2. The Constitution reads, "We, the people, in order to form a more perfect union, seek to: establish justice; insure domestic tranquility, provide for the common defense, promote general welfare, secure the blessings of liberty for ourselves and posterity." The preamble of the United States Constitution is a unique Federal writing in that it has never been regarded as a source of any substantive power conferred to the government or any department thereof. It specifies that the purpose of the articles and amendments following it are only to serve the people.

3. Congress adopted, on the 21st of February, 1787, a resolution in favor of convening delegates from the state legislatures for an important matter. On the 25th of May, with seven states in convention, a Mr. George Washington of Virginia was elected the first president of that new nation. The first official matter proceeding under his administration was the consideration of a proposed "constitution" upon which the laws of the nation were to be based. In September of that year, the United States Constitution, one of the seminal documents of human history, was almost unanimously endorsed by the present members of the Congressional convention of delegates. The delegates then transmitted it to Congress with a resolution detailing the operations and implementation of this new document.

4. Based on the great Western intellectual tradition, the Constitution represented hundreds of years of thought, with its' roots veined in the soil of the Renaissance. It was inspired by the later period aptly famed as the "Enlightenment." The explicit purpose of the Constitution, with its' focus on the inherent rights belonging to all those it governed, was to remove people from the darkness of oppression into the light of liberty and freedom. The early "Americans", as they became known, made courageous statements regarding the essential Nature of God-given rights. Benjamin Franklin said, "Rebellion to tyranny is obedience to God." To them, the law was a system which implemented God's Design and uplifted society as a whole. There was no obedience to unjust law. Many of those "Founding Fathers" fought and gave their lives in order to free themselves from the shackles of subjugation. That Constitution which they produced was a mutually validated social contract designed to benefit, not a subjugator-subject dynamic, but a citizen and his representative. The union born from its' ratification became one of the most powerful empires known to man.

5. The United States of America is a nation of constitutional rights functioning in the form of civil liberties and the laws necessary to uphold them. The daily operations, legitimacy, and even very existence of this nation are based upon the constitution. The lives of its' citizens are intertwined with its' application. Every governmental or private action must be in accordance, first and foremost, with the entirety of the constitution and all of the civil liberties guaranteed therein.

## II . INTRODUCTION

1. The petitioner contends that the Constitution has been egregiously betrayed. He contends that cultural groups in the United States are being systematically targeted for control and subjugation. The Department of Justice, in conjunction with many arms of the government, including the Federal Bureau of Prisons, has routinely conspired to strip vulnerable Americans of their rights. The plaintiff is one such person. I have lived in this nation, enchanted by its' promises of opportunity and liberty - due process and equality - rights and freedoms. I saw myself trodding in the giant footsteps of the forefathers who founded this nation. They had created the opportunity for all to manifest their full potential, so I naively expected the same. The reality I have encountered has been far, far, more devious.

2. The plaintiff files this civil-rights action to redress deprivation of constitutional rights under the color of law. The Supreme Court and Congress have recognized pro se due-process suits as deterrents against failures to obey the strictures of Federal Statutes and the constitution. They target Federal officers and agencies whom overstep the bounds of Congress' dictates, the constitution, its' amendments, and the powers vested in the separate branches of government. The presumption in civil actions is that all allegations, which are well-plead and clearly not frivolous, must be assumed as factual [Labove v. Lalley, 809 F. 2d 220 (3rd Cir. 1987)]. Therefore, the entirety of the facts outlined in this suit should be taken as such until proven inconceivable or implausible by the defendants.

3. Courts must interpret pro se motions liberally as per [Higgs v. Attorney General, 655 F. 3d 333, 339 (3rd Cir. 2011)]. This motion clearly contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." [Ashcroft v. Iqbal (2009)] The movant contends that the defendant acted in clear absence of legal authority and power [United States Constitution Article III, 2 Ch. 2]. Congress has interpreted [Article III] as an operational guide for the branches of government.

4. In order to understand how a person is legally detained, the Constitution must first be reviewed. How the United States Attorney General and his subordinates obtain legal authority to subject citizens, particularly the petitioner, to detention is a constitutional question. The plaintiff postulates that the defendants manifested and exercised an illegitimate detaining power in such a way that [Article III] forbids.

III . BACKGROUND

1. The petitioner affirms under penalty of perjury as per [28 USC section 1746] that the following statement of facts is true and correct. The petitioner is mature, of sound mind, and competent to testify.  At all times relevant to this petition, the petitioner reserves his right to adjudicate all facts, claims, or issues which may be disputed in a court with due authority.

2. The plaintiff was "convicted" of one (1) charge:

"Conspiracy to Provide Material Support to a Foreign Terrorist Organization", [18 USC section 2339], [subsection (b)], on 6/11/15.

He was sentenced to a total of 136 months on 8/28/2015. He plead guilty to the charges. He did not appeal the judgment of conviction directly.

3. He was represented by Joseph Flood whose office is located at

10621 Jones St, Suite 301-A,
Fairfax, VA 22030

4. The illegal detention became final 50 months ago.

5. The government arraigned the movant on 2/27/15 yet failed to state that the indictments were not presented before a grand jury, or that they did not have any true-bill documentation. An indictment may have been filed on information later. Regardless, they failed to maintain the competence of the law which requires more than that. Therefore, the Federal court had no grounds upon which to pronounce a sentence and the defendant had no authority to detain the plaintiff. Those detaining judgments entered in total disregard of every aspect of due-process must be set aside, without those judgments' orders, as they must be regarded as nullities. They are not "voidable" but simply inherently void and form no bar to a recovery sought - even prior to reversal in opposition to them.

6. The petitioner is currently held in the respondent's custody in violation of the United States Constitution and the laws of the United States [28 USC section 2241 (c)(3)]. He is currently housed in a facility controlled by the United States Department of Justice by and through the Federal Bureau of Prisons, subjected to the authority of the officers hired to work therein. He is also subject to unannounced transfer from facility to facility, without any notice, often as an attempt to discourage litigation. He is currently held by the defendants, with his ultimate detaining custodian being the current USAG. His claim of authority to hold him is based on a "Judgment in a Criminal Case" also termed a "Judgment and Commitment Order."

IV . PRESUMPTIONS UNDERLYING the PETITIONER'S DETENTION

The petitioner's detention based upon a criminal "conviction" is underlied by six (6) presumptions:

 a) That the defendants, including sitting United States Attorney General at the time that the criminal action was filed, had the appropriate authority, as delegated by the sitting United States President, to act in his capacity under the color of the Executive branch;

b) That the defendants had the required authority to enter the petitioner's residential State, under force of arms, and subject him, part of that State's sovereign body politic, to detention under Federal Criminal offense statute on record and that the defendants had the authority to enforce that Federal statute over the territory of the petitioner's residential state, under the color of the United States;

 c) That the defendants had the authority to detain the petitioner only because he was tried under due-process of law, being indicted by a grand jury of his peers;

 d) That the defendants had the authority to detain the petitioner knowing that his conviction was only based upon the supreme law of the land, not unofficial dicta;

 e) That the defendants detained the petitioner without any significant conflict of interest on the part of: the District court judge who issued the "Judgment and Commitment," the prosecution, the defense attorney(s), and the defendants themselves, and;

 e) That the petitioner's natural presumption of total innocence was overcome beyond reasonable doubt, thereby making stripping his liberty by detention a legal recourse.

## V. CLAIM STATEMENT

1. It is a maxim of law that all United States courts, and the officers acting based on their conclusions, are presumed to lack the authority to accept jurisdiction of any case. That presumption is only overridden when the plaintiff, in the relevant criminal case being the UNITED STATES OF AMERICA, proves, beyond a reasonable doubt, that the defendants in an action are under the jurisdiction of the court. Otherwise, they have no authority to detain a free individual.

2. The plaintiff has been deprived of his constitutional and statutory rights since he was arrested. He was placed in Federal prison without being duly convicted - in total violation of [United States Constitution Thirteenth Amendment]. The movant was placed into custody of the defendant without the most basic proceedings of the courts. The procedures used to incarcerate him violated [28 USC section 2071(b)], [18 USC section 1623(e)], and [18 USC section 3621(c)]. He is held by the defendants in custody without lawful authority as the "Judgment of Conviction in a Criminal Case" used as a pretense to detain him is inherently void ab initio and a legal nullity.

3. The petitioner is entitled to relief upon the basis of six (6) claims:

 a) The defendants did not have the required executive authority to detain the petitioner, as conferred by the United States Constitution to that department through the sitting President. The petitioner's detention was totally invalid.

b) The defendants did not have the requisite jurisdictional authority to enter the petitioner's residential State, under force of arms, to subject a member of that State's sovereign body politic, namely the petitioner, to detention based upon the application of the Federal criminal offense statute that he was convicted of. The defendants did not have the authority, under color of the United States, to enforce that Federal criminal offense statute over the territory of the petitioner's residential State, as it was unconsenting. The petitioner did not commit the offense within a Federal enclave, neither did the required residences of multiple court functionaries exist, at the time, within a Federal enclave.

 c) The defendants did not have the authority to detain the petitioner because he was not tried under any semblance of due-process. The indictments used to detain the defendant were never legally drawn and presented to a proper court, under oath, by a grand-jury duly impaneled to issue the charges describing the offense against the law. He has not, till this day, received a true indictment. The grand-jury's independence and decision-making process were never constituted to perform their role in the criminal case. The movant was placed into the government's custody without any true-bill documentation. The movant asserts that the seminal documents of his criminal case simply do not exist or exist in a form inconsistent with the laws derived from the Constitution. Therefore, he is held unlawfully. The documents which do exist are essentially forged to illegally incarcerate him and are a direct result of vindictive prosecution.

 d) The defendants did not have the authority to detain the petitioner as he knew that his "conviction" was not based upon the supreme law of the land but was based upon unofficial dicta. Those dicta carry no constitutional weight and are a parallel legal corpus used to illegally detain the plaintiff, thereby creating an unconstitutional circumstance of another law operating as supreme besides the Supreme Law as designated by the Constitution.

 e) These violations occurred as the defendants were incentivized to incarcerate the plaintiff for as long as possible, due to their profit and gain as derived from his detention. The defendants did not have the authority to detain the petitioner because they were and continue to be financially incentivized to incarcerate him irrespective of legality - thereby creating an unconstitutional conflict of interest.

 f) The forgoing mean that presumption of the petitioner's actual innocence was never overcome in order for jurisdiction to have been valid. The petitioner was "guilty until proven innocent."

4. Each subsequent claim represents a successive escalation of jurisdiction to detain the defendant. As is proven, there was absolutely no level of valid jurisdiction to detain him - though each level is predicated upon the previous level. Taken as a whole, they represent the total dissolution of the due-process required to detain him. Each claim is proven through its' corresponding section in "PART II" of this petition, with the exception of claim (f). Claim (f) is the culmination of all other claims and is discussed in "PART III." Additionally, each has an authenticated statement of jurisdictional and material facts subsumed therein. As the legal basis of each claim, self-authenticating documentary evidence is presented.

VI . RELIEF REQUESTED

1. The sufficient grounds for relief arise due to a total lack of jurisdiction. The movant asserts an implied cause of action under the Constitution's separation-of-powers principle. The defendant lacked all authority to perform the functions otherwise authorized by law. The processes which the defendants disregarded were instituted by the architects of the Constitution so as to protect the masses from partial or vindictive prosecution   by   an official elite. Whatever detention orders issued total disregard of those laws are essential nullities. The plaintiff must be released without day as detaining him is not in the pursuit of justice.

2. The petitioner respectfully requests that the court comply with the provisions of [28 USC section 2248] and accept the petitioner's uncontested statements of facts and evidence as true.

3. The petitioner requests that the court issue a Writ of Habeas Corpus, ordering the defendants to discharge and release the petitioner from custody immediately, without delay.

4. If the court should not do so, then it should issue an order directing the defendants to show  cause as to why this writ should not be granted within three days of issuance of that order. Furthermore, the "Order to Show Cause" should direct the respondent to produce admissible evidence to prove, beyond reasonable doubt, that the defendants have the authority to continue to detain the plaintiff.

5. Should the defendants fail to timely respond, then the "Writ of Habeas Corpus" should see the relief granted at once.

6. If necessary to resolve any factual disputes, the plaintiff demands a jury trial on all triable issues.

7. Pursuant to [28 USC section 1657] the petitioner requests that the scheduling judge schedule this petitioner for expedited consideration as the petitioner's inherent constitutionally protected rights are being violated.

VII . The BRANCHES of GOVERNMENT

1. The United States Federal government is divided into three departments, typically referred to as "branches", as per the Constitution. The United States Attorney General and the Department of Justice may only obtain lawful [United States Constitution Article II] jurisdiction to subject an individual, such as the plaintiff, to detention based on certain terms and conditions. Each branch may act only on the basis of "powers".

2. [Article I, section 1] vests all legislative powers in the Congress. Congress consists of a Senate, comprised of Senators, and a House of Representatives, composed of State representatives. [Article II, section 1, clause 1] vests all executive power solely in the president. [Article III, section 1] vests judicial power in one Supreme court and in inferior courts, as Congress may establish per necessity.

3. [Article I, section 8, clause 18] and the [Tenth Amendment] indicate that no power vested by the Constitution in the Federal government is self-implementing. All such powers remain dormant unless Congress implements them through legislation. [Clause 18] states,

"[Only] [t]he Congress shall have power...to make Laws which shall be necessary and proper for carrying into Execution the forgoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any department, or officers thereof."

The [Tenth Amendment] further limits would-be pursuers of extra-Constitutional official powers. It states,

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

[Clause 18] and the [Tenth Amendment] clearly establish the limits of legislative authority to either: execute powers vested by the Constitution or repeal them. The notion that Congress has some "unlimited" legislative power to create any law that it subjectively deems "proper" contradicts the obvious purport of the Constitution. It may only pass those laws necessary to instill the power for the executive branch to implement the Constitution, and those laws derived therefrom.

4. [Article II, section 1, clause 1] establishes that all Executive power is solely vested in the President. It states,

"The executive Power shall be vested in a President of the United States of America."

No other officer, agent, employee, warden, nor general is constitutionally vested with such power. Executive power is the ability to implement the Constitution and laws derived therefrom, particularly as understood by the judicial branch in cases wherein the law is not totally explicit.

5. [Article III] vests judicial power both in: one Supreme Court and in various inferior courts, as may be ordained by Congressional acts. Judicial power is the ability to apply the Constitution and laws derived therefrom to cases with disputes between parties which may be resolved by the scope of those two. It does not permit for independent creation of novel law, only application of United States law and interpretation of it where necessary due to ambiguity or seeming contradiction.

## VIII . JURISDICTION

1. The plaintiff is currently being held unlawfully and unconstitutionally within a Bureau of Prisons facility despite his actual innocence. This motion seeks to redress deprivation under color of Federal law for rights secured by the United States Constitution. All courts established under Congress' aegis may issue all writs and all motions necessary or appropriate in their respective jurisdictions. This court has jurisdiction under [28 USC section 1331] to hear this motion.

2. All courts proceeding to hear [28 USC section 2241] motions have a solemn duty to vet the petitioner's allegations in such a motion for symptoms of constitutional infirmities. It is only where clear evidences demonstrates that the petitioner is not entitled to relief that a hearing on the claims may be denied. However, if the plaintiff is capable of presenting documentary and legal basis to demonstrate that he may be entitled to relief, that his claims are not futile or groundless, then: he is also entitled to meaningful hearings to determine the preponderance of evidence [United States v. Strother (A5 Miss.) (1970)]. [Section 2241] is an extraordinary motion and the court's jurisdiction to grant relief under it is limited in scope. However, it is the appropriate vehicle to release a petitioner from illegal custody. The court is bound to accept at face value all well-plead allegations in such a motion, but must determine their reasonableness and likelihood of success on the merits.

3. The petitioner has been denied his fundamental constitutional rights and the passage of time does not preclude him from relief in retrieving them. [Section 2241] is available at common law without limitation of time. The petitioner has a right to be heard under [Federal Rule of Criminal Procedure 60(A)(3)]. Congress and the Supreme Court have established that such a petition must demonstrate that:

a) it is based on compelling circumstances which require it in order to achieve true justice;

b) the petitioner continues to suffer unconstitutional and illegal detention that would be remedied by granting the motion, and;

c) there is a general presumption of irregularity in the attacked proceedings preceding the motion.

4. The defendant invokes [United States Constitution Articles III] as the court lacked all conceivable forms of jurisdiction over the plaintiff and his criminal case. Such a motion is permitted as the plaintiff is held under a judgment which violates the Constitution and the court lacked jurisdiction to enter said judgment. The arguments raised herein have no time-barrier as the jurisprudence of the Supreme Court has established that a courts' power to hear these sort of contentions "can never be forfeited or waived" [Cotton, 535 US at 630]. Federal habeas review is available when, were it not to betaken, a constitutional violation would result in the miscarriage of justice as per [Wainwright, 433 US at 91]. That includes unjust incarceration [Engle v. Isaac, 456 US 107, 135, 71 L. Ed. 2d 783 S. Ct. 1558 (1982)]. As the government has never overcome the presumption of the petitioner's actual innocence, this court has jurisdiction to hear these arguments [Carrier, 477 US at 495-496].

5. It has expressly held that arguments of jurisdiction can be raised even beyond the entry of judgment. The objection that the government lacked such jurisdiction "may be raised by a party or by a court on its initiative, at any stage in the litigation, even after trial and the entry of judgment." [Arbaugh v. Y&H Corp., 126 S. Ct. 1255, 1240, 160 L. Ed. 2d. 437 (1996)] No statute of limitations exists when there is a legitimate penological interest [Turner v. Safley, 482 US 78, 78, 96 L. Ed. 2d 64, 107 S. Ct. 21254 (1987)]. Jurisdiction represents a question of judicial power and for a court to act outside of it is to act ultra vires [Ruhrgas AG v. Marathon Oil Co., 526 US 574, 583 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999)].

6. The defendants are the custodians of the Petitioner, by and through the employees of the Department of Justice. This district court's jurisdiction is based upon [28 USC section 2241]. Primarily, he is held under the authority of the United States Attorney General. [28 USC section 509] states;

"All functions of other officers of the Department of Justice and all functions of agencies [including the Federal BOP] and employees of the Department of Justice are vested in the Attorney General... ."

7. Though he is held under his authority of the USAG, whose office is in the District of Columbia, a court may assume jurisdiction of a [section 2241] filing if it is a proper and convenient forum for it to do so. Under [28 USC section 1391(b)], venue can lie in more than one district. Venue is appropriate in this district because the substantial events giving rise to this writ, namely the petitioner's ongoing detention, occur here. A plaintiff's forum of choice is to be afforded great weight and should be

given "paramount consideration" [Shutte v. Armco Steel Corp., 431 F. 2d 22, 25 (3rd Cir. 1970)]. According to the [Federal Rules of Civil Procedure], such a writ may be brought in any judicial district in which the defendants reside, a substantial part of the events occurred, or where the plaintiff himself resides.

IX. STATUTORY BASIS for [28 USC section 2241] FILINGS

1. As required by [Monsanto Company v. Geerston Seed Farms, 561 US 139, 130 S. Ct. 2743, 177 L. Ed. 2d 461, (2010)] the petitioner will demonstrate, separately, his standing for each form of relief sought. The petitioner claims that his detention by the defendants is in violation of the Constitution and laws of the United States as per [28 USC section 2241(c)(3)]. He does not contest the validity of his conviction or sentence in this motion. According to [Zannino v. Arnold, 531 F. 2d 687, 692, n.5, 1876, US (3rd Cir. 1976].

"[W]rit of habeas corpus under 28 USC section 2241 is proper remedy where there is no attack on Federal sentence, thereby rendering 28 USC section 2255 as inadequate or ineffective to test the legality of the Federal prisoner's detention."

In order to collaterally attack the decision of a trial court or to argue that a sentence was in excess of the legal maximum, a filant must pursue his claims under [28 USC section 2255]. The scope of relief grant for such a motion is only in the nature of vacating, setting aside, or otherwise correcting a sentence. Essentially, it is a request for resentencing.

2. A petitioner seeking to base a writ of habeas corpus on issues other than the sentence or conviction may find appropriate provisions under [28 USC section 2255(e)], which states,

"An application for a writ of habeas corpus on behalf of a prisoner who is authorized to apply for such relief by a motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such a court has denied him relief, unless it appears that remedy by motion is inadequate or ineffective to test the legality of his detention."

3. A [section 2255] motion is inappropriate as it would require this petitioner to first secure relief regarding his sentence prior to challenging the constitutionality of his detention. The petitioner postulates that he cannot be compelled to test the legality of his custody solely based on the validity of the sentenced imposed. This is because he presents defects that are either unrelated to the validity of the conviction or sentence, precede the validity of both, or confront those issues in a way intrinsically intertwined with issues that are not directly related to the criminal proceedings.

4. The petitioner does not solely challenge the jurisdiction of the court which rendered the "judgment in a criminal case". Rather, he challenges the jurisdiction of the defendants to subject the petitioner to detention. The decision in [United States v. Wheeler, 886 F. 3d 415, 434, 2018 (4th Cir.)] states,

"Conclusion: in sum, we hold that section 2255 is an inadequate and ineffective means to test the legality of the appellant's detention, which is based on a sentence issued with an increased mandatory minimum. Therefore, the district court erred in dismissing the Appellant's section 2241 petition. Appellant may pass through the savings clause portal and have the section 2241 petition addressed on the merits. For the foregoing reason, we vacate and remand."

The provisions of [section 2255] do not provide for remedy or relief from detention, or for a movant to question the legality of his detention. It deals exclusively with the judgment issued by a district court trial judge. Therefore, predicated on the content of "V. Claim Statement" in this motion, it is evident that [section 2255] is inadequate to hear the issues presented herein. Nevertheless, [28 USC section 2241, et seq.] represents an adequate and effective test as to the legality of the petitioner's detention - dealing with his claims. The provisions of [section 2241] require that the petitioner challenge the authority of the detaining custodians to subject the petitioner to detention. It does not challenge the trial court.

5. [28 USC section 2243] covers the issuances of writs and requires the presiding judge over a filing to do one of two things. Either he must summarily issue the writ of habeas corpus upon application or direct the defendants to demonstrate why the writ should not be granted. The express purpose of Congress in [section 2243] is to afford the defendant the opportunity to submit evidence in order to prove his claim of authority to detain the applicant. It states,

"A court, justice or judge entertaining an application for writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted... ."

The petitioner argues that it is factually proven that the respondent in this case, the defendants, do not have the authority to

subject the petitioner to detention and that, were they compelled to "show cause," they would be totally incapable of demonstrating such authority.

6. The defendants did not invoke the trial court's jurisdiction in the petitioner's criminal case, thereby rendering the "Judgment of Conviction" issued by the trial court null and void ab initio. It has no force or effect. The judgment rendered there in is a legal nullity which does not exist as a matter of law. That means that the defendants are subjecting the petitioner to unlawful detention in violation of the Constitution and laws derived therefrom.

7. The petitioner does not contest the conviction or sentence, and any arguments which may seem to do so in "V. Claim Statement" or as elaborated in "PART II" must be construed, as much as possible, to apply only to the detention. However, the petitioner may establish the blatant illegality of the conviction simply to demonstrate that a detention based on a blatantly, well-known to be, illegal sentence is consequently illegal. [Bellomo v. United States, 297 F. 2d 494, 2003 (E.D. NY)] states,

"Because inmate challenged his conviction and sentence, 28 USC section 2255 should have been medium for relief he sought; however, inmate's habeas corpus petition was properly filed under 28 USC section 2241 pursuant to the savings clause of 28 USC section 2255 because section 2255 was inadequate and/or ineffective to test the legality of inmate's detention where inmate did not challenge his guilty plea on direct review, and thus, procedurally defaulted his claim by that failure, and inmate was, therefore, entitled to raise his claim of actual innocence in petition for writ of habeas corpus under section 2241."

The petitioner did not directly challenge a guilty plea on appeal. As such, a motion to "vacate, set aside, or correct the sentence" is ineffective to challenge the legality of the petitioner's detention. Therefore, the petitioner has clear standing to pursue his rights under [section 2241].

8. As a direct and proximate result of the unlawful detention that the petitioner is subject to, he is experiencing ongoing irreparable injury to his life, inherent liberty, property, and pursuit of happiness due to the defendants': breach of constructive trust, unjust enrichment, breach of fiduciary duty, fraud, fraud upon the Constitution, fraudulent concealment, perjury, gross negligence, violations of the [Fourth], [Fifth], [Eighth], [Tenth], [Thirteenth], [Fourteenth Amendments], [Article III] to the Constitution, and the General Assembly's "Declaration of Human Rights". The plaintiff's complaint contains sufficient factual matter to allow the court to draw the reasonable inference that the defendants are liable for; unlawful detention, kidnapping, illegal arrest, unlawful imprisonment, abuse of the legal process, physical trauma, psychological trauma, lowering the defendant's life expectancy considerably, involuntary servitude, loss of wealth, larceny, familial discord, public defamation, libel, and many more injuries which are too many to list.

9. The petitioner has [United States Constitution Article III] standing to bring this civil action before the court as it is a case involving injury harming the petitioner due to a violation of the Constitution. [Vermont Agency of Natural Resources v. United States, ex rel. Stevens, 529 US 765, 120 S. Ct., 1858 146 L. Ed. 2d 836 (2000)] explains the [Article III] requirement as to affecting standing to challenge particular conduct as violative of Federal law. It states,

"To establish standing under Article II of the Federal Constitution, a plaintiff must meet the requirements which constitute the irreducible minimum of standing which is an essential and unchanging part of the Case-or-Controversy requirement of Article II; such requirements being that the plaintiff must

(1) demonstrate an injury in fact, which is a harm that is (a) both concrete and actual or imminent, and (b) not conjectural or hypothetical;

(2) establish causation, which is a fairly traceable connection between the alleged injury in fact and the alleged conduct of a defendant; and

(3) demonstrate redressability, which is a substantial likelihood that the requested relief will remedy the alleged injury in fact."

It is indisputable that incarceration causes great harm, but that harm is considered justified in pursuit of justice. However, a person incarcerated without just cause or due process suffers that great harm in the absence of justice. Additionally, he is actually facing this harm, and not simply filing on behalf of posterity [Wolff v. Cash 4 Titles, 351 F. 3D 1358, 24504 (11th Cir. 2003)] and [Clinton v. City of New York, 524 US 417, 118 S. Ct. 2091, 141 L. Ed. 2d 393-394 (1998)]. It is further indubitable that the defendants are the cause by which the plaintiff continues to be incarcerated. This motion further demonstrates that the relief requested herein will remedy the ongoing component of the ongoing injury.

10. As the court has yet to issue an "Order to Show Cause" to the defendants, there does not yet exist a controversy or dispute to the facts or claims raised by the petitioner. However, the controversy exists due to the petitioner challenging his detention.

[Susan B. Anthony List. v. Driehause, 573 US 149, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014)] explains that [Article III] limits jurisdiction of Federal courts to cases which contain controversy. The doctrine of standing gives meaning to those Constitutional limits by identifying those disputes which can appropriately be resolved through the judicial process. Its purpose is to prevent judicial processes from being used to usurp powers of the political branches of government. Actual controversy is a requirement of a hearing before the courts, not only when the complaint was filed, but through all stages of litigation - otherwise the judge must rule based on the lack of controversy, as per [Kingdomware Technologies Inc. v. United States, 136 S. Ct. 1969, 195 L. Ed. 2d 334, 3921 (2016)].

11. The petitioner claims that the petitioner's detention by the respondent is in violation of the Constitution and laws of the United States. He does not contest the sentence or conviction. He contests the legality of the petitioner's detention by the respondent and claims that he is suffering daily injury and damage as a direct result of that illegal detention. His standing to present this petition for habeas remedy is based on a case and controversy as per [Article III].

12. According to [28 USC section 2242], the defendants' claim of jurisdiction to subject the petitioner to detention is the matter which is subject to challenge in a [section 2241] motion - not the jurisdiction of the trial court as it is not currently subjecting the prisoner to detention. The claim of jurisdictional authority of the defendants did not begin at the issuance of a "Judgment in a Criminal Case" as rendered by the United States District court, but actually began based on certain presumptions as outlined elsewhere in this motion.

13. [28 USC section 1657] establish that it is a mandatory duty to expedite consideration of any action brought under habeas corpus; especially [section 2241]. It states,

"Notwithstanding any other provision of law, each court of the United States shall determine the order in which civil actions are heard and determined, except that the court shall expedite consideration of any action brought under Chapter 153 [i.e. 2241]...if good cause thereof is shown."

Good cause is indisputably shown in "Part II" of this motion.

## X. VENUE

1. This court is an appropriate venue for redress under [28 USC section 1391(b)] as it is the physical location wherein the the plaintiff is currently detained. The movant was, at all relevant times, prosecuted within the United States. The defendants are responsible for violating the plaintiff's due-process as stipulated for in the [United States Constitution Fourteenth Amendment] - thereby affecting his liberty interest to be free from prosecution without probable cause. They are culpable for placing him in custody unlawfully. His illegal detention does not diminish his due-process rights [Haines v. Kerner, 404 US 519, 30 L. Ed. 2d]

2. "Whenever a section 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." [Rumsfeld v. Padilla, 542 US 426, 447, 124 S. Ct. 2711, 159 L. Ed. 2d 513 (2004)] Under [28 USC section 2241(a)]], district courts may only grant habeas relief "within their respective jurisdictions." The Supreme Court has interpreted that statute to mean "that the court issuing the writ have jurisdiction over the custodian," [Braden v. 30th Judicial Circuit Court of Ky, 4101 US 484 495, 93 S. Ct. 1123, 35 L. Ed. 2d 443 (1973)]

3. At all times relevant to this petition, the petitioner has been in the respondents" custody, or their predecessors. [28 USC section 2241] provides that, in order for a petitioner to invoke the court's jurisdiction to entertain a petition for habeas corpus, the petitioner must:

a) Establish that the petitioner truly is in custody under the color of the United States' authority, and;

b) That the petitioner is in custody in violation of the Constitution and its' derivative laws, as per [section 2241(c)(1) and (3)], [United States Constitution Article III, section 2, Clause 1], [28 USC section 1331], and [Constitution Article I, section 8, clause 18].

5. The petition must be signed and verified by the petitioner, alleging facts concerning his detention that he believes make it illegal. He must include the name of those holding custody over him and the virtue of the claims which demonstrate that his detention is illegal. This petitioner provides a "Verified Statement of Facts" concerning his commitment and detention. He has identified the parties currently holding him in custody and the basis of their claims to authority to do so. On these basis, the petitioner has filed this writ in court.

6. The petitioner is physically held in a facility of the Bureau of Prisons, a subdivision of the United States Department of Justice. The Attorney Generals listed as defendants are not remote figures without direct involvement in the illegal detention. According to [28 USC section 503],

"The President shall appoint, by and with the advice and consent of the Senate, an Attorney General of the United States. The Attorney General is the Head of the Department of Justice."

Therefore, all actions of the Department of Justice and its' subdivisions are under his authority. They are effectively his actions. [28 USC section 509] states,

"All functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General... ."

So, while the warden, and wardens of other BOP facilities, are directly holding the plaintiff - they do so under the permission of the Attorney General. Just as the warden does not physically restrain the petitioner from leaving the facility, rather her subordinates do under her authority, so does the Attorney General give the allowance to illegally incarcerate the plaintiff. [18 USC section 4041] states,

"The Bureau of Prisons shall be in charge of a director appointed by and serving directly under the Attorney General. The Attorney General may appoint such additional officers and employees as he deems necessary."

Those additional officers include the warden, who acts with the Attorney General's authority. Furthermore, [18 USC section 3142(i)] explains,

"In a detention order issued under subsection (e) of this section, the judicial officer shall –

(1) include written findings of fact and a written statement for the reasons for detention;

(2) direct that the person committed to the custody of the Attorney General for confinement in a correctional facility separate, to the extent practicable, from person awaiting or serving sentences or being held in custody pending appeal... ."

The law clearly explains that the petitioner is currently under the custody of the Attorney General. [5 Op. OLC 87, 19 (March 30, 1981)], [4 OP. OLC 719, 80 (July 25, 1980)], [12 Op. OLC 202, (September 19, 1988)], [Code of Federal Regulations Title 28, Chapter 1, Part 0, Subpart T], and, specifically, [28 USC section 0.111], affirm,

"The Director of the United States Marshals Service shall direct and supervise all activities of the U.S. Marshals Service, including:

(k) Sustension of custody of Federal prisoners from the time of their arrest by a marshal or their remand to a marshal by the court, until the person is committed by order of the court to the Custody of the Attorney general for the service of their sentence... ."

As the petitioner has been sentenced, he is in the custody of the Attorney General.

7. [CFR Chapter I, part 61, Appendix A], [18 USC section 4082] and [18 USC section 3621] stipulate that the Bureau of Prisons is a subdivision of the Department of Justice, and is the party which has custody of Federal Prisoners sentenced under [18 USC section 3581]. [section 3621] states.

"A person who has been sentenced to a term of imprisonment pursuant to the provisions of Subchapter D of Chapter 227 shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624."

The purpose of these provisions is to provide the Attorney General custody of Federal prisoners. The purpose of the Bureau of Prisons is to provide the Attorney General with the means to carry out the function of providing custody to Federal Prisoners.

8. The authority of the Attorney General to delegate to the Bureau of Prisons does not divest him of responsibility, any more than the President is divested of responsibility for those actions delegated by him to other members of the Executive Branch [28 USC section 509] and [3 USC section 301]. [Article Ii] does not vest any presidential powers in the Department of Justice or in its' head. All functions of the Attorney General are exclusively vested in the President who may delegate power only. Unless and until said written and signed presidential delegation order is issued, all powers of the President remain dormant as they refer to the Department of Justice and the Attorney General.

9. The Attorney General is an appropriate defendant. [Mandarino v. Ashcroft, 318 F. Supp. 2d 12, (D. Ct. 2003] explained that, although the AG was not the physical jailer of a detained alien, he was the legal custodian over whom the court had personal jurisdiction. [So v. Reno, 251 F. Supp. 2d 1112, (E.D. NY 2003] held that the USAG was the proper respondent for an immigrant's petition for writ of habeas corpus because he was the immigrant's ultimate custodian and had personal jurisdiction over her. [Chavez-Rivas v. Olsen, 194 F. Supp. 2d 368, (D. NJ. 2002)] rejected the interpretation of [28 USC section 2243] to mean that the only proper custodian in a habeas petition was the warden of the prison wherein the petitioner was held. Noting the policy reasons against ordinarily deeming the Attorney General a custodian, the court found that there was no danger of forum shopping or transportation expenses. It concluded that the AG was the ultimate custodian of an incarcerated person.

## XI . JUDICIAL INDISPUTABILITY of FACTS and LAW

1. A presiding judge is neither a qualified witness nor advocate for any party in an action. [28 USC section 2248] provides that all verified statements of jurisdictional facts, material facts, and self-authenticated documentary evidence, such as the Constitution or laws enacted under its' augusts, must be deemed true. The simple fact that the pro se petitioner is submitting them does not detract from their correctness or conclusiveness. A judge's competency as a witness prohibits them controverting, contesting, disputing, rebutting, or refuting any such facts [Federal Rule of Evidence 605]. Therefore, no opinion or dicta of the judge, or even of fellow judges in any district, can be utilized to contradict such facts.

2. In order for a judge to seek allowance to oppose the truthfulness of any fact submitted by the petitioner in this motion, they must issue an "Order to Show Cause" according to [28 USC section 2241]. That order would direct the defendant to show cause as to why the writ should not be issued, and must be filed as a written affidavit issued under oath by the defendants personally [28 USC section 1746]. It must be based on the defendant's personal knowledge according to [Federal Rule of Evidence 601]. Therefore, the law does not allow for a judge to directly argue the facts, only to compel the defendants to provide a certifiable defense. Otherwise, all facts not disputed are deemed true and agreed upon by both parties in this action, in conformity with [28 USC section 2248].

PART II

XII . EXECUTIVE AUTHORITY to DETAIN the PETITIONER

1. The petitioner claims that: the respondents are subjecting him to unlawful detention in violation of the Constitution and laws of the United States. That is due to the lack of evidence regarding a fundamental presumption of all Federal criminal proceedings: that they had the required authority to abduct the petitioner from his residential State, under force of arms, and subject him, as a part of that State's sovereign body politic, to detention under the Federal criminal offense statute on record. There is no evidence in the District Court's record proving that the respondents had the requisite [United States Constitution Article II] Presidential authority to detain the petitioner.

2. The presumption is that the District court lacked the authority to accept the jurisdiction to hear the case until the plaintiff, in this case the UNITED STATES of AMERICA as represented by agents acting in official capacity, proved that [Article II] basis. It is under a maxim of law that the District court lacked the authority to accept jurisdiction of the petitioner's criminal case until they unequivocally proved otherwise. The UNITED STATES, being the plaintiff in this petitioner's criminal case, had the onus of proof - beyond reasonable doubt - to demonstrate basis for the District court to accept jurisdiction. The procurement of [Article II] authority is something reasonably provable.

3. [Article I, section 8, clause 18] requires Congress to implement "all necessary and proper laws" pertaining to carrying out [Article II] powers. That implementation is publicly available on the Federal Register. [5 USC chapter 1, section 101] indicates that Executive departments, such as the Department of Justice, are established only by and through such legislation. [5 USC ch.3] implements executive powers for those departments. Yet, as [Article II, section 1, clause 1] vests only the President with executive power, [5 USC ch.3] and [28 USC part II] must be understood to only implement those powers for the sitting President. Executive departments and their heads, such as the defendants, can only act as assistants to the President. They are not independent actors with inherent constitutional authority.

4. These provisions are not oversights by the architects of the Constitution. Unlike [Article II], [Article III] vests judicial power in multiple entities as inherent. Therefore, their vesting of executive power only in the president was an intended limitation on such power. Judicial power is vested in one Supreme Court and in any inferior courts that Congress may ordain as necessary. That includes the District court which the petitioner's case was heard in. [Article I, section 8, clause 18] require Congress to implement judicial power in the courts, which has been carried into execution as per [28 USC part I] and elsewhere in the [United States Code].

5. However, [Article II] governing executive power contains no provisions for independent subordinates as [Article III] does. Executive power remains constitutionally vested solely in the President, not any department or officer besides him. Congress has no constitutionally-derived right to delegate [Article II] power to department heads, including the defendants, as evinced by [3 USC section 301-303]. Congress implemented executive power as to the President in [3 USC ch.4, section 301],

"The President of the United States is authorized to designate and empower the head of any department or agency in the executive branch, or any official thereof who is required to be appointed by and with the advice and consent of the Senate, to perform without approval, ratification, or other action by the President:

(1) any function which is vested in the President by law, or
(2) any function which such officer is required or authorized by law to perform only with or subject to the approval, ratification, or other action by the President: Provided, that nothing contained herein shall relieve the President of his responsibility in office for the acts of any such head or other official designation and authorization shall be in writing, shall be published in the Federal Register, shall be subject to such terms... ."

Detention for a Federal crime is an act of executive power. The sitting President has the sole capability and responsibility to detain individuals convicted of crimes.

6. As [Article II, section 1] vests all executive powers in the President, the provisions of [3 USC section 301] render all actions of Department heads, who are properly delegated the authority to act, Presidential acts in actuality. However, no one may act as the President, with his exclusive [Article II] authority, without explicit delegation - in writing - after consent of the Senate and publishing on the Federal Register. Where applicable, the specific officer to whom power is delegated should be mentioned by name.

7. [28 USC part II, section 501] establishes that Congress is the only entity which may implement [Article II] powers regarding the Department of Justice. It does so only through legislation. However, Congress cannot vest such power inherently in the head of any Executive agency. The defendants could never have had the inherent authority to detain the plaintiff, under the President's authority, without the aforementioned process or without individually being elected as the President themselves. Unless the acting President issued a written "Delegation Order", thereafter publishing it in the Federal Register for public comment, with the consent of the Senate, and Congressional implementation - the defendants had absolutely no authority to detain the plaintiff. The President may only delegate such power by that process. These processes are stipulated in the Constitution, not as senseless "red-tape" or bureaucratic hurdles, but to prevent tyranny.

8. No such legal delegation occurred with regards to the defendants as pertains to the plaintiff's criminal case. [Scott v. Carew, 196 US 100, 49 L. Ed. 403 (1905)] states,

"The President speaks and acts through the heads of the several departments, in relation to subjects that pertain to their respective duties."

Acting under the pretenses of the land's highest office is a serious legal due-process claim which must be thoroughly evidenced. Congress may not delegate such authority independently. Congress may only implement the President's executive power after he delegated it through a written order with the Senate's approval. The record of the District court in the plaintiff's criminal case, the Federal Register, and numerous rebuffed attempts to obtain this information do not corroborate this presumption underlying the plaintiff's detention.

9. In order to justify detaining the plaintiff, the Federal Register, at the very least, must reveal the existence of a written "Delegation Order" issued by the sitting President, for the sitting United States Attorney General or his subordinates, by the time of the petitioner's detention. That process must have been complete prior to detaining the petitioner. As no evidence exists of that process, the presumption that jurisdiction is lacked to detain the petitioner was never overcome. Therefore, his imprisonment is void ab initio and a legal nullity which must be revoked without day.

10. These processes are mandatory. They are not voluntary and have never been repealed. Violation of them invalidates the detention of a suspect or even a "convicted criminal." Without granting the petitioner this due-process right, the Federal government as represented by the defendants had no authority or jurisdiction to detain him. The merit's of the prosecution's accusations are totally irrelevant if due-process is violated. The petitioner's intrinsic presumption of actual innocence was never overcome.

11. Due to the prohibition against ex post facto laws imposed at [Article I, section 9, clause 3], this blatant due-process violation cannot be cured retroactively. For the President to delegate such authority now would only permit the defendants' jurisdiction against cases following that delegation, not to the petitioner who was initially detained without it. The petitioner was detained on the incorrect pretense that Congress had the requisite authority to establish the executive positions of the defendants as separate, intrinsically endowed, executive powers. The Constitution does not permit that due-process short-cut which led to this preponderant illegal detention.

12. All available records evidence that the defendants did not meet the due-process requirement to demonstrate written Presidential "Delegation Orders." Those orders are argued to have permitted them to enter the petitioner's residential State, under force of arms, to detain the petitioner under the color of Federal authority. However, the defendants are unequivocally unable to prove that: Congress implemented the President's executive power, which he used to delegate executive power to the defendants by issuing said "Delegation Orders," naming specific appointees as necessary, with the Senate's consent, then publishing them in the Federal Register for review. As that has been proven not to occurred, the respondents are subjecting the petitioner to illegal imprisonment and he is entitled to relief.

XIII . FEDERAL CRIMINAL and TERRITORIAL JURISDICTION

1. The defendants have failed to prove, beyond reasonable doubt, a fundamental presumption underlying the petitioner's detention. They are unable to prove that they had the unqualified, extraterritorial, authority to detain the petitioner, based on the Federal criminal statute of conviction. Detaining the petitioner required invasion of his residential State, in areas not owned by the Federal government. The government was required to prove that the commencement of the instant "infraction" occurred on Federal territory, that all of the buildings used to detain and try the petitioner are also Federally owned. As a result, the petitioner claims that the respondents are subjecting him to unlawful detention in violation of constitutional due-process.

2. That is as no evidence exists to substantiate their claim to executive detaining authority. That authority allows the President, and those he duly delegates, to detain individuals on suspicion of crimes. They used that authority, not clearly delegated to them, to subject the petitioner - a part of his residential State's sovereign body politic - to detention and extradition in other states. That was all done under his "Federal criminal statute of conviction." However, the United States District Court did not have the requisite authority to issue a detention order as its' presumption of lacking jurisdiction was never overcome. It is a maxim of law that jurisdiction is lacked until the plaintiffs in a case thoroughly evince the courts' right to it.

3. As jurisdiction is presumed absent for all District Courts, the defendants in this case were required to prove their claim to detain the petitioner beyond reasonable doubt. The defendants had to demonstrate a constitutional basis to enter and detain the petitioner from his residential State, under the color of Federal law, for a purported "offense." [United States Constitution Article 1, section 1] vests all legislative powers in Congress. [Article I, section 8, clause 18] states,

"... it is specifically provided that the Congress shall have the power to make all laws necessary and proper for carrying into execution not only its own powers, but also all other powers vested by the Constitution in the [Federal] Government of the United States, or in any department or officer thereof."

This provision establishes that the States of the Union, acting through their Congressional delegates, are exclusively vested with the legislative power to either implement or rescind laws designed to actualize the powers vested in the Federal government by the Constitution. It does not vest judges with any unlimited legislative authority to enact any legislation which they subjectively deem "necessary and proper." As the phrase "necessary and proper" is not punctuated, it must be understood to be modified by the following term "for."

4. Understanding that, it is perspicuous that only two types of laws may be enacted. Those "necessary..for carrying into execution" all powers vested by the Constitution in the government and those "proper for carrying into execution" all powers vested by the Constitution in the government. Congress, therefore, has no unrestricted power to make law. It has an extremely limited power to legislate for a specified purpose. What [Article I] does establish is that the Union's several independent States have absolute authority over the Federal government and not vice versa. The Federal government's powers remain dormant until or unless the States endow it. Therefore, the Federal government is subject to the absolute authority of the States.

5. Unfortunately, the judge in the plaintiff's criminal case has presumed the opposite as indicated by his "Judgment and Commitment" order. By relying on the "supremacy clause" of [Article IV, clause 2], he has essentially subjected the petitioner's residential State to the absolute authority of the Federal government. That clause states,

"This Constitution, and the Laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land, and the Judges in every State shall be bound thereby, any Thing in the Constition or Laws of any State to the contrary not withstanding."

However, the petitioner's residential State never surrendered its' sovereignty upon entrance in the Union as [Article IV], the [Tenth Amendment], and the [Fourteenth Amendment] prove. The Union is simply a constitutional republican body which oversees particular matters that individually sovereign States cannot on their own. The petitioner's State of residence can only be said to have ever agreed to exercise certain powers with its' sister States through a system of representatives. That system is only for the benefit of the whole.

6. Acknowledging that the Constitution is the supreme Law of the Land, the petitioner's resdiential State retained its' sovereignty and claim to, alongside other individually sovereign States, absolute authority over all powers vested in the Federal

government. That government exists virtually at the fancy of the Union's States who voluntarily implement its' powers. The [Tenth Amendment] clarifies,

"The powers not delegated to the United States by tyhe Constitution [explicitly], nor prohibited by it to the States, are reserved to the States respectively, or to the People."

Congress cannot implement extra-constitutional powers "created" by judicial decree or otherwise. Such powers cannot be lawfully ratified by the people as required by [Article V] and [Article VII], making it impossible for Congress to add nonexistent Federal powers to the Constitution.

7. [Article III, section 2, clauses 1-2] delegate limited jurisdiction to the Federal judiciary, which Congress executed at: [28 USC part IV], [Chapters 81, 83, 85, 87, 89, 90], [18 USC chapter 211], and [18 USC section 3231]. [Section 3231] states,

"The District courts of the United States shall have original jurisdiction, exclusive of the States, of all offenses against the laws of the United States."

However, the jurisdiction of Federal courts is still limited by the jurisdiction of State courts. In [18 USC section 3231] it further states,

"Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof."

To reconcile the two, one must turn to [18 USC chapter 211] and [18 USC section 3231-3232] which limit Federal courts' application of "original jurisdiction" only to offenses committed within the "Judicial District" or "Judicial Division" of Federal District courts.

8. The Constitution does not delegate any self-executing power to the Federal judiciary to exercise by "judicial decree." Furthermore, no evidence exists that the Union's States authorized the Federal judiciary to exercise some extra-constitutional power by legislation. The [Tenth Amendment] recognizes that the States are independent, sovereign, constitutional republics in and of themselves. As such, they retain the absolute power in Congress to implement all other constitutional powers.

9. Both the States and the Federal government are equally prohibited from exercising certain powers, as in [Article I, section 10, clause 1] and the [Fourteenth Amendment]. Especially, the privileges and rights of American citizens are not to be unduly abridged. In fact, application of ordinarily constitutional law for the purpose of violating a citizen's rights is unconstitutional as detailed in [42 USC section 1981] and [18 USC section 241-242].

10. The Federal government has highly limited powers. Excluded from its' powers are any abilities not specifically delegated by the Constitution. It is also barred from those powers delegated by not implemented or rescinded by Congress. Therefore, the scope of Federal capability is extremely limited. "Executive orders" or "judicial decrees" do not somehow extend the limits of Federal power. Yet, [Article I, section 8, clause 17] could be misinterpreted to vest the Federal government with unlimited legislative, judicial, and criminal jurisdiction. That would include the ability to force the plaintiff's Federal criminal statute of "conviction" over the entire of his residential State. [Clause 17] was introduced to ensure only that a single State could not be subject to the collective authority of other States acting as an independent body. It states that the Federal government may only,

"... exercise exclusive legislation in call Cases whatsoever, over such District (not exceeding ten miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all PLaces purchased by the Consent of the Legislature of the State in which the same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful buildings."

The Federal government is limited, by the Constitution, in jurisdiction. It is limited only to: the territorial seat of government (the District of Columbia), Federal territories, Federal commonwealths, Federal island properties, and Federal enclaves. That does not include the entirety of the petitioner's residential State.

11. Like all other Federal powers, [clause 17] authority must be executed by Congress as described in the following [clause 18]. Otherwise, it remains a dormant power which the defendants could not have lawfully exercised. Without Congress' execution, no Federal officer had the authority to act within territories purchased by or ceded to the Federal government. The Constitution does not allow Federal authority outside of those areas, however, Congress did enact [clause 17] at [40 USC section 3112] as pertains to the Federal government's limited jurisdiction.

12. In fact, the power for the Federal government to establish jursdiction over enclaves it owns was a dormant power until the year 1940, when Congress enacted [40 USC section 3112]. Prior to that, the Federal government had no authority to establish jurisdiction over any of the geographical territory of any State - let alone the petitioner's residential State. After it, Congress permitted the Federal government to maintain authority over enclaves within the States under the conditions that:

a) the enclave be purchased from a State for a pressing purpose;
b) the State legislature consent to the Federal government's jurisdiction, and;
c) the Federal government then must accept jurisdiction by filing a "Notice of Acceptance" with that State's governor.

Without meeting these requirements, the Federal government has absolutely no authority over an area.

13. [Adams v. United States, 319 US 312, 63 S. Ct. 1122, 87 L. Ed. 1421 (1943)] established that District courts, including the court issuing the plaintiff's detention order and the court hearing this instant action, have no jurisdiction to detain a citizen unless they afford the government of that State notice as to the establishment of a Federal enclave. The "United States Supreme Court Digest, Lawyers' Edition" states in [section 748],

"Unless and until notice of acceptance of Jurisdiciton has been given, Federal courts are without jurisdiction to punish under the criminal laws of the United States [Federal government]...United States agencies and authorities may accept exclusive or partial jurisdiction over lands acquired by the United States by filing notice with the government of the state, or by taking other similar appropriate action, and that unless and until the United-States has so accepted jurisdiciton, it shall be conclusively presumed that no such jurisdiction has been accepted."

This holding is unqualified, as per [18 USC section 7]. This does not include property "leased," as in [United States v. Innue (C.D. of CA. 2010)].

14. Any act not in compliance with [40 USC section 3112] is an extra-constitutional exercise of authority. That section states,

"The term 'Federal area' means any lands or premises held or acquired by or for the use of the United States or any department, establishment, or agency of the United States' and any Federal area, or any part thereof, which is located within the exterior boundaries of any State, shall be deemed to be a Federal area within such State."

Therefore, the respondents must prove that the petitioner's place of: instant "criminal" conduct of suspicion, arrest, transfer, court, and all detention facilities were all "Federal areas." Otherwise, his due-process was violated. [18 USC section 7(3)] states that the term "territorial jurisdiction of the United States" means,

"Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dock-year, or other needful building."

Federal territorial, legislative, executive, and judicial jurisdiction exist only in those areas aforementioned. All Federal judicial districts, courthouses, and detention centers must be comprised exclusively of Federal enclaves - otherwise a persons' detention is illegal.

16. [28 USC sections 81-131] establish those Federal districts located within the States. However, as per [40 USC section 3112], Federal authority is only to be applied within the geographic locations of the Federal: territories, commonwealths, insular possessions, enclaves, and the District of Columbia. Furthermore, [28 USC sections 132, 134, 545, 751, 1331, and 1865] mandate that, for a person to be detained on the basis of criminal proceedings, that the physical locations of: the Federal district court, the clerk of court's permanent residence, the United States Attorney's permanent residence, the Assistant United States Attorney(s) permanent residence(s), the residences of all grand jury members, and the residences of at least four-million (4,000,000) permanent inhabitants, in the case of a "special grand jury," all be within that lawful Federal enclave. Otherwise, it is not a Federal judicial district.

17. In order to prove that the petitioner is currently detained constitutionally, documentary evidence proving that this process was fulfilled is required. That includes ownership documents, such as titles and land deeds, specifically evincing that all the locations relevant to the "criminal" proceedings were either Federal enclaves or within them. Such compliance is not discretionary, it is a fundamental aspect of Federal due-process. Furthermore, written consent by the petitioner's residential State must be provided alongside a written "Acceptance Notice" of Federal jurisdiction as applied to that State's government.

18. The defendants hold and have held the petitioner illegally, since his arrest till this day. They are unable to prove, by due documentary evidence, that any of the "criminal" conduct, subsequent proceedings, or required residences, leading to and including the detention itself, were within the bounds of legal Federal jurisdiction. As a result, the Federal government had no provable authority to apply the petitioner's statute of "conviction" in or detain him from his residential State. He is unequivocally entitled to relief.

## XIV . SUBJECT-MATTER JURISDICTION

1. The plaintiff has been deprived of his constitutional and statutory rights since he was arrested up till this day. Despite the lack of documentary evidence proving that he was detained with requisite subject-matter jurisdiction, those documents' validation, or furnishing; he was placed in Federal detention. That is a violation of his due-process. In violation of the [US Constitution Thirteenth Amendment], the indictments used to detain him were never legally drawn and subsequently presented to a proper court, under oath, by a grand-jury duly impaneled to issue the charges describing the offense against the law. He has not, till this day, received a true indictment to justify his "commitment" in a Federal institution. The grand-jury's independence and decision-making process were never constituted to perform their role in committing the plaintiff to detention. He was placed into the government's custody without the most basic proceedings of the courts.

2. The petitioner asserts that the seminal documents which justify detention simply do not exist in his case, or exist in a form inconsistent with those laws derived from the Constitution. He is currently held unlawfully. The documents which do exist are essentially forged to illegally incarcerate him, violating [18 USC section 1623(e)] and [18 USC section 3621(c)]. The procedures used to detain the petitioner also violated [28 USC section 2071(b)]. The plaintiff contends that the defendants acted in clear absence of power as stipulated for in [Article III, ch. 2]. Congress has interpreted [Article III] as an operational guide for the judicial branch. It is evident that the defendants have exercised constitutionally derived powers in such a way that is illegal.

3. The plaintiff has previously filed other petitioner and motions concerning his detention, in several courts and with multiple government agencies. He has requested the documents mentioned herein from: his defense attorney(s), the clerk of courts, the entire [Freedom of Information Act] process including a lawsuit, and a civil suit. His efforts to utilize the provisions of these various legal avenues appear to have either been refused, neglected, concealed, or ignored.

4. Despite all of these attempts, the plaintiff has never been afforded his right to inspect the essential documentary evidence in question. All of the requested: records, documents, data, negotiable instruments, files, answers, or responses that would demonstrate the legality of the plaintiff's detention were never presented upon request, said to be non-existent, or even commented upon sufficiently. There is no indication that some, or any, of the hearings required to validate them ever occurred. Disclosure has not been made by the government, which was required for any sort of constitutionally guaranteed vigorous defense in his criminal case. It has the burden of proof, not the plaintiff, to demonstrate the legality of his detention in the absence of these materials. The maxim of law indicates that "silence is tantamount to fraud." The plaintiff is a captive-in-error without these materials and, indeed, the very difficulty in obtaining them is a separate due-process violation independently warranting his relief on its' own - regardless of whether or not the documents even exist at this late stage.

5. The petitioner has filed a "Motion for Disclosure" and a subsequent "Motion to Compel" in his District of "conviction." He argued deprivation of constitutionally guaranteed due-process under the color of law by Federal officers and agencies whom failed to obey Congress' dictates, Federal statutes, and the Constitution. Not only did the grand-jury foreperson not sign the indictment, but many of the essential documents necessary for a valid prosecution were not: docketed on the court's record, available publicly, or ever furnished to him. He has never been afforded an hearing on these issues wherein evidence could be presented regarding them, or even a response to them. He was unable to appeal as no decision was ever filed.

6. Ordinarily, a Federal criminal prosecution is presumed to be initiated by an arrest. That arrest must be based upon a finding of probable cause, arrest warrant, affidavit of criminal complaint, or indictment. The relevant materials are then presented before a grand-jury. The grand-jury quorum convenes and must concur upon findings of criminal activity for an indictment to reach the status of "true-bill." The defendants had no authority to detain the petitioner without that process. These processes were instituted by the architects of the Constitution so as to protect the masses from partial or vindictive prosecution. Until these threshold requirements are met, it is not in the pursuit of liberty or justice if a person is detained.

7. Implicitly jurisdictional, the Constitution states, "[n]o person shall be held to answer for a capital or otherwise infamous crime unless on presentment of indictment by a Grand Jury [of his peers]... ." Therefore, the petitioner had a constitutional right to a grand-jury based indictment. Yet, the record of the court's docket contains no account of such an hearing. The petitioner, therefore, argues based on the "presumption of irregularity" that he was never actually indicted. In [Ex parte Bain, 121 US 1, 7 S. Ct. 781, 30 L. Ed. 849 (1887)], the Supreme Court held that a person cannot be charged or detained if material complications abound vis-a-vis the grand-jury's impaneling or competency in finding the indictment. All proceedings, including incarceration, derived from such an "indictment" are void.

8. As no valid indictment has ever been produced, the essential elements of [Fed. R. Crim. P. 6(a)] have not been affirmatively demonstrated. A lawfully impaneled jury of twelve must concur with an indictment, as in [subsection 6(c)], for it to reach the statute of "true-bill." The purpose of an independent grand jury is not only to investigate possible criminal conduct, but also to act as a "protector of citizens from arbitrary and oppressive governmental action." The grand jury's purpose is to "stand between the prosecutor and the accused," determining the legitimacy of a charge or whether it "is dictated by malice or personal ill." [Hale v. Henkell, 201 US 42 (1906)] Former Supreme Court Justice A. Scalia expounds, in [United States v. Williams, 504 US 36 (1992)], that the grand jury is the equivalent of a fourth branch of government - not to be tampered with by any other branch.

9. An indictment which is not validated according to the full extent of the law is, in actuality, documentary "information." Information alone is no basis to detain a citizen. Pursuant to [Rule 7(b)], information filed with a clerk of court cannot perform the same functions as an indictment. Detaining officers not in possession of an "Indictment Waiver" lack all subject-matter jurisdiction over an accused. Such information is "virtually meaningless." [United States v. Wessels, 139 F.R.D. 607, 609 (M.D. Pa 1991)] held that a defendant who has not waived his right to prosecution solely on indictment retains his rights, irrespective of information filings by a United States Attorney. The jurisdictional nature of that waiver requirement is grounded in the [Fifth Amendment], which requires the government to prosecute felonies by indictment - absent a valid waiver in open court.

10. If a true indictment does exist against the plaintiff, the court would have no need to docket a "waiver of indictment" later. However, regardless of the docketing of a document entitled "Indictment Waiver," it must be validated in open court in order to allow prosecution or detention on the basis of information. The text of [Fed. R. Crim. P. 7(b)] clearly appears to provide that an accused's waiver of prosecution by indictment can only occur after the defendant "in open court" is advised of the nature of the charge and "the defendant's rights." Facially, the meaning is evident: if the plaintiff in this instant action was not instructed by the trial judge, as both were physically present in the courtroom, that; he had a constitutional right to be indicted by a grand jury of his peers, then proceeded to waive it - the plaintiff was entitled to be indicted by a grand-jury. The Advisory Committee's note reveals the obvious purpose of this [Rule], to contain "safeguards against improvident waivers." Were it at all possible to waive indictment simply by an attorney's filing, even containing a defendant's signature, then there would be no "safeguard" at all. The government has yet to provide evidence of a true-bill indictment or colloquy of indictment-waiver to justify detaining the petitioner.

11. Without an indictment, the courts are barred from issuing "Commitment" orders. In [Gernstein v. Pugh, 420 US 103 (1975)] the Supreme Court rejected the contention "that the prosecutors' decision to file information is itself a determination to probable cause that furnished sufficient reason to detain a defendant pending trial connections." The Supreme Court held in [Albrecht v. United States, 272 US 1, 547 S. Ct. 250 , 71 L. Ed. 505 (1927)] that an arrest based only upon a US Attorney's information filings was invalid as the accompanying affidavits were fundamentally defective. Detention under such pretenses violates the [Fourth Amendment].

12. The plaintiff's allegations are supported by factual evidence, granting him the right to relief. The lack of some, or all, of the following documents' disclosure, furnishing, and their nonexistence on the court's docket is presented:

a) All indictments upon which detention is based - duly endorsed by a grand-jury foreperson and United States Attorney, OR;

a) Colloquies of Indictment Waivers in open court;

b) Arrest Warrant;

c) Affidavit of Criminal Complaint;

d) Summons upon Complaint;

e) Letter of Concurrence Certificate;

f) Affidavit of Probable Cause Hearing;

g) Grand jury transcripts, ballot, and/or record for inspection.

13. Such an absence of complaint means that the essential facts constituting detaining jurisdiction are still, to this day, unstated. According to [Fed. R. Crim. P. (3) and (4)], the purpose of such a complaint is to enable the appropriate magistrate to determine whether probable cause exists to support detention [Giordenello v. United States, 357 US 480, 2 L. Ed. 2d 1503, S. Ct. 1254].

Pursuant to [Article III], the [Fourth] and [Fifth Amendments], failure to file a "true-bill" indictment means that the presumption of a lack of jurisdiction is never overcome. The plaintiff's defense attorney did not object to the lack of a true-bill indictment, despite no indication ever being given that it was actually validated. A prosecutor simply drafting a document and entitled it "Indictment" cannot be a sole justification for detention. The entire "true-bill" validation process must be thoroughly evinced to the courts and the defense in a criminal case. Inability to do so leads to an automatic presumption that due-process was violated; as the onus of proof regarding a crime is upon the claimant. The plaintiff should have been assumed innocent until proven, beyond all reasonable doubt, guilty.

14. The defendants had no authority to detain the plaintiff on a "capital or otherwise infamous crime unless on presentment of indictment by a Grand Jury." Doing so is brazen overreach and speaks to vigilante abuse of power. In [18 USC (former) statute 687 and 3771] Congress detailed criminal procedure prior to and including a verdict. The Supreme Court ruled in [Midland Asphalt Corp. v. United States, 489 US 794, 103 L. Ed. 2d 879 109 S. Ct., 1494 (1989)] that the lack of an indictment based in a grand-jury validation gives rise to a categorical right not to be detained.

15. As stipulated for in [18 USC sections 241 and 242], the plaintiff's rights were violated as a matter of fact and law. The defendants abducted him, circumvented constitutionally guaranteed due-process of law, clearly failing to comply with the highest laws and fundamental principles of the land. They abused the [Authority of Judicial Conference] policy and the [E-Government Act (2002)] which allow redaction of signature in particularly sensitive circumstances, providing a high bar to redaction. The plaintiff's detaining indictments were never legally drawn per the [Administrative Procedures Governing Filing Service and Electronic Means, section II, A5 @ ii (April 2008)]

16. A captive is not required to provide evidence that he needs essential court documents. Basic constitutional rights do not need corroboration by some extraneous source besides the law. It is irrational to assert that a detainee will somehow have a provable premonition regarding a due-process error and that that mystical foreknowledge will be validated by the disclosure of documents. That is clearly not the intent of the law. The defendants were required to provide evidence justifying their detaining the plaintiff, furnishing him with sufficient copies of all true-bill documentation. There is no "evidence" in the sight of the law besides that.

17. Settling this [section 2241] action is required as the plaintiff has filed motions in his criminal case and has two ongoing civil lawsuits pertaining to the issues raised herein. [Douglas Oil Co. of California v. Petrol Stops Northwest, 441, US 211, 60 L. Ed. 2d 156, 44 S. Ct. 1667 (1979)] determined that material sought to prevent possible injustice in another judicial proceeding has greater precedence than any asserted "need" for continued secrecy. The aversion of the plaintiff's defense counsel, the prosecution, the defendants, and various agencies of the government in divulging these documents and documentary evidence of the court's hearings to validate them provide clear proof that the plaintiff is detained illegally.

18. The plaintiff is entitled to relief as the court and the defendants had and have no subject-matter jurisdiction to justify detaining him.

XV . CASE PRECEDENT SUBVERSION of the CONSTITUTION and LAWS

1. The defendants did not have the authority to detain the petitioner as they knew that his "conviction" was not based upon the Supreme Law of the Land. Rather, it was based upon unofficial dicta. No evidence exists in the District Court's record justifying reliance or any duty to rely on "case precedent/law" as supreme law; superseding the Constitution, United States Code, the Code of Federal Regulations, and the law of the petitioner's residential State. A detention cannot be based on the dictates of judicial "legislation" as derived from an informal "judicial Constitution." Detaining the petitioner under such pretenses means that the presumption of an absence of jurisdiction was never overcome.

2. The defendants lacked jurisdiction to detain plaintiff until the default state of lacking jurisdiction is overcome. It can only be overcome with evidence ultimately deriving from the Constitution. The onus of proof rests squarely with the respondents. They have the burden to demonstrate that the plaintiff is detained under the "controlling law" as established by the Constitution. However, the plaintiff argues that he is detained without due judicial process as he is detained on the basis of a law-form not stipulated for by the Constitution. He argues that he is detained upon the basis of "case precedent" which, in addition to being an illegitimate grounds for detention, plainly contradicts the Constitution.

3. Case precedents are un- or published opinions, orders, decrees, and judgments, filed as public record for the Federal courts of the judicial branch. As a class, it includes those issued by the: Supreme, Appeal, Tax, Bankruptcy, Claims, International Trade, and District Courts. If such issuances form any significant basis upon which the plaintiff was detained or any of them referenced contained contradicting the Constitution - then documentary evidence must be provided as to their authority and justification in utilizing them. The Constitution does not provide that a criminal action may be filed pursuant to such judicial decrees, not allotting them any power of detention.

4. The Constitution does not specifically provide for power vested in the judges of the courts. They may not issue binding law by any judicial "decree." However, the plaintiff is detained as if such decrees are true legislation, and that they are sources in some parallel "judicial Constitution." Furthermore, no evidence exists that such judicial power, were it to exist, would be self-implementing. Congress must carry all powers into execution as per [US Constitution Article I, section 8, clause 18]. Congress has never vested judges with such power.

5. Judges are subject to the "Supreme Law of the Land" as per [Article VI, clause 2] and are all bound - by solemn oath - to support the Constitution as per [Article VI, clause 3]. Yet, the judge presiding over the petitioner's criminal case disrupted the implementation of the Constitution by issuing, by judicial decree, an order for the plaintiff to be detained. That order was only issue pursuant to case "law." By doing so, the judge violated [Federal Rule of Evidence 605]. He had a mandatory duty to accept self-authenticating documentary evidence as true and correct, in the absence of any contrary evidence, as per [28 USC section 2248]. The Constitution cannot be assumed dormant with another law dominant in the absence of perspicuous proof. The judge was required not to detain the plaintiff without a "Finding of Facts" including the basis of any conclusions at law, as per [Federal Rule of Civil Procedure 52(a)]. No "Judgment and Commitment" remains valid in the absence of such a finding.

6. It is a non-discretionary duty of the presiding judge in this instant case to grant the petitioner's writ as per [28 USC section 2241]. No factual dispute exists regarding: the petitioner's statement of facts or documentary evidence. They conclusively prove that the plaintiff is being subjected to imprisonment by the respondents on false grounds and in violation of the Constitution. That is as he is held under the pretenses of "case law." Such "case law" has never been enforceable and cannot ever be enforced by mandamus or otherwise. "Case precedents" are binding only upon the parties in a particular action and cannot serve as any basis to detain the plaintiff, especially in contradiction of the Constitution.

7. The petitioner had and retains his inherent due-process, and indeed fundamental human right, to know - with full disclosure - what the court considered the "Supreme Law of the Land." He lives in this nation upon a social contract validated through his obedience to that "Supreme Law." He can only violate that contract, and thereby be detained, if he violates that "Supreme Law." The Supreme Law of the United States can only be assumed to be the Constitution and its' derivative laws. Therefore, arbitrarily adding "case law" as another source of legislation fundamentally abridges the plaintiff's due-process and violates the social contract. That is an offense against the Constitution, which states,

"This Constitution and the Laws of the United States which shall be made in Pursuance thereof; and all treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land, and the Judges in very State

shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary not withstanding."

No provision exists of law "created" by case precedent, which is actually a "Thing...Contrary" to the Supreme Law.

8. The defendants hold the plaintiff under case "law" whilst being bound to hold him only under the Constitution for a violation of it. Such detention is, in fact, its' own violation of the Constitution. [Article VI, clause 3] states,

"The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by oath or Affirmation to support this Constitution... ."

[Article II, section I, clause 8] prescribes the oath required of the president while [5 USC section 3331] prescribes the oath required of all officers and employees of the Federal government. It includes subsequent affidavits of verification required to hold an office of honor, trust, and profit in any branch of the Federal government. [28 USC section 453] prescribes the oath of all Federal judges. If the judge in the petitioner's criminal proceedings upheld "case precedent" then he fundamentally contradicted the Constitution and should have been mandatorily disqualified immediately. The petitioner argues that that is so.

9. [Article I, section 1] vests all legislative power in Congress. [Article III, section 1] only vests judicial power in the Supreme Court and in subsequent inferior courts ordained by Congress. No evidence exists of any constitutional provision vesting the judicial branch with legislative powers of any kind or sort. The [Tenth Amendment] and [Article I, section 8, clause 18] stipulate that the Federal government only has powers specifically delegated to it, in writing, by the Constitution. Even those powers remain dormant until Congress voluntarily executes them. No implied constitutional powers exist, nor may any new powers be created, even by "necessity," whether Congress voluntarily attempts to execute such powers or not.

10. [Article VI, clause 2] does not identify "case precedents" as an element or derivative of "Supreme Law." No constitutional provision establishes the permissibility for the judge in the petitioner's criminal case to have detained him on the basis of "case law," or even to utilize it in the proceedings as evidence to substantiate the plaintiff's accusations. Were such the case, the nation would be secretly run on a rogue, de facto, judicial "constitution." However, even that would be self defeating according to [Adams v. United States, 319 US 312, 63 S. Ct. 1122, 87 L. Ed. 1421 (1943)].

11. The plaintiff in this action will assume, for the sake of argument, that "case law" is binding. Therefore, the precedent established in [Adams v. United States] would have to be binding in his criminal case. The Supreme Court established in that case that no district court has the authority to detain a citizen, such as the plaintiff, under a Federal criminal statute unless it was perpetrated within the confines of a Federal enclave (as conclusively proven in section "XIII . Federal Criminal and Territorial Jurisdiction" of this motion). An accused cannot be charged Federally for an act committed within a State which was not, at the time of the instant infraction, established as such an enclave.

12. Therefore, refusing to concede the argument presented this section ("XV . Case Precedent Subversion...) automatically requires the acceptance of the argument in section "XIII . Federal Criminal..." of this motion. There are no double standards in the law. If the defendants claim jurisdiction to detain the plaintiff under one "case law precedent" then the "case law" of [Adams v. United States] must also be applied - especially as that one actually corroborates the Constitution whereas the case "law" used to detain the plaintiff contradicts it. There cannot be some selective application of "justice" in a nation founded upon "liberty and justice for all."

13. The erroneous basis upon which the plaintiff is detained arises from a misconception regarding a Supreme Court precedent. The judge in the plaintiff's criminal case only asserted authority to legislate and authority to accept the "legislation" of other judges based upon [Marbury v. Madison, 5 US (1 Cranch) 1 37, 2 L. Ed. 60 (1803)]. The misinterpreted excerpt of that case reads,

"It is emphatically the province and duty of the judicial department to say what the law is."

However, that applied only to a dispute regarding the constitutionality of Congressional Acts. Indeed, that Court specified,

"If two laws conflict with each other, the courts must decide on the application of each."

That cannot be interpreted to vest judges with some independent legislative authority in contradiction to the plain language of the Constitution. Doing so would violate the plaintiff's constitutionally-guaranteed due-process rights.

---------------------------------------------------------------------

In Marbury v. Madison, supra, 5 U.S. (1 Cranch) at 177 and 2 L.Ed. at 73-74, the Court recognized the Absolute Supremacy of the Constitution, to wit:

"That the people have an original right to establish, for their future government, such principles, as, in their opinion, shall most conduce to their own happiness is the basis on which the whole American fabric has been erected.  The exercise of this original right is a very great exertion; nor can it, nor ought it, to be frequently repeated.  The principles, therefore, so established, are deemed fundamental.  And as the authority from which they proceed is supreme, and can seldom act, they are designed to be permanent." (emphasis added).

"This original and supreme will organizes the government, and assigns to different departments [Branches] their respective powers.  It may either stop here, or establish certain limits not to be transcended by those departments [Branches]." (emphasis added).

The <u>Marbury</u> Court [at 1 Cranch 178 and 2 L.Ed. 74] held that, to wit:

"If then, the courts are to regard the Constitution, and the Constitution is superior to any ordinary act [or "Judicial Decree" via "Case Precedent"/"Case Law"] must govern the case to which they both apply." (emphasis added).

"Those, then, who controvert the principle that the Constitution is to be considered, in court, as a paramount law, are reduced to the necessity of maintaining that the courts must close their eyes on the Constitution, and see only the law [Legislatiion], [and in most cases, see only "Case Precedent"/"Case Law"]. (emphasis added).

"This doctrine would subvert the very foundation of all written constitutions.  It would declare that an act ["Case Precedent"/ "Case Law"] which, according to the principles and theory of our government, is entirely void, is yet, in practice, completely obligatory.  It would declare that if the legislature [and the Federal Judiciary via "Case Precedent"/"Case Law"] shall do what is expressly forbidden, such act, notwithstanding the express prohibition, is in reality affectual.  It would be given to the legislature [and the Federal Judiciary via "Case Precedent"/ "Case Law"] a practical and real omnipotence, with the same breath which professes to restrict their powers within narrow limits.  It is prescribing limits, at pleasure" [of both the Legislature and the Judiciary].  (emphasis added).

"The government of the United States is of the latter
description. The powers of the legislature are defined and
limited [See: Article I, Section 8, Clause 18]; and that those
limits may not be mistaken, or forgotten, the constitution is
written." (emphasis added).

"To what purpose are powers limited, and to what purpose is
that limitation committed to writing, if these limits may, at
any time, be passed by those intended to be restrained? The
distinction between a government with limited and unlimited
powers is abolished, if those limits do not confine the persons
on whom they are imposed, and if acts prohibited and acts
allowed, are of equal obligation. It is a proposition too
plain to be contested, that the Constitution controls any
legislative act [and/or "Case Precedent"/"Case Law"] repugnant
to it; or, that the legislature may alter the constitution by
an ordinary act [or "Judicial Decree/"Judgment"]." (emphasis
added).

The Court continues, to wit:

"Between these alternatives there is no middle ground. The
Constitution is either a superior paramount law, unchangeable
by ordinary means, or it is on a level with ordinary legislative
acts [and/or "Judicial Decree"/"Judgment," subject to being
overruled at the "discretion" of Members of the Judiciary],
and, like other acts, is alterable when the legislature shall
please to alter it." (emphasis added).

"If the former part of the alternative be true, then a
legislative act contrary to the constitution is not law: if the
latter part be true, the written constitutions are absurd
attempts, on the part of the people, to limit a power in its
own nature illimitable."

"Certainly all those who have framed written constitutions
contemplate them as forming the fundamental and paramount law
of the nation, and, consequently, the theory of every such
government must be, that an act of the legislature ["Judicial
Decree"/"Judgment"], repugnant to the constitution, is VOID."
(emphasis added).

"This theory is essentially attached to a written constitution,
and, is consequently to be considered by this court, as one of
the fundamental principles of our society. It is not therefore
to be lost sight of in the further consideration of this subject."

"If an act of the Legislature ["Judicial Case Precedent"/"Case
Law"], repugnant to the Constitution, is void, does it,
notwithstanding its invalidity, bind the courts, and oblige them
to give it effect? Or, in other words, though it not be law,
does it constitute a rule as operative as if it was a law?
This would be to overthrow in fact what was established in

theory; and would seem, at first view, an absurdity too gross to be insisted on. It shall, however, receive a more attentive consideration," (emphasis added).

The foregoing Holding of the Supreme Court in Marbury v. Madison, supra, regarding the Supremacy of the Written Constitution, is what gave rise to the following, to wit: [Id., 1 Cranch 177]:

"It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each."

And, at 1 Cranch 178, continuing:

"So if a law be in opposition to the Constitution; if both the law [statute] and the Constitution apply to a particular case, so that the court must either decide that case conformably to the law [statute], disregarding the Constitution; or conformably to the Constitution, disregarding the law [statute]; the court must determine which of these conflicting rules governs the case. This is the very essence of judicial duty." (emphasis added).

The Duty referred to by the text of the Holding, which reads, to wit:

"It is emphatically the province and duty of the judicial department to say what the law is."

is to determine the Constitutionality of an Act/[Statute] of Congress, not to engage in "Judicial Legislation," nor to establish a "Judicial Constitution."

In context with the entirety of Marbury v. Madison, supra, of the Holding which reads [once again]:

"It is emphatically the province and duty of the judicial department [Branch] to say what the law is ..." (emphasis added).

must be understood in context with the Court's Holding to actually mean: "It is emphatically the province and duty of the Judicial Department [Branch] to determine the Constitutionality of a Federal Statute, once Disputed."

The [Constitution for the United States of America, at Article III, Section 2, Clause 1] vests Judicial Power in all Cases arising under the Constitution and Laws of the United States, [Subjects of Jurisdiction]. The Supreme Court in [Marbury, at 1 Cranch 178-179], affirms the Court's recognition of this fact, to wit:

"The judicial power of the United States is extended to all cases arising under the Constitution."

"Could it be the intention of those who gave this power, to say that in using it, the Constitution should not be looked into? That a case arising under the Constitution should be decided without examining the instrument under which it arises?"

"This is too extravagent to be maintained."

"In some cases, then, the Constitution must be looked into by the judges. And if they can open it at all, what part of it are they forbidden to read or to obey?"

"There are many other parts of the Constitution which serve to illustrate this subject."

[Marbury, at 1 Cranch 180] established to what Laws Judges are bound, to wit:

"Why otherwise does it [the Constitution] direct the judges to take an oath to support it? This oath certainly applies in an especial manner, to their conduct in their official character. How immoral to impose it on them, if they were to be used as the instruments, and the knowing instruments, for violating what they swear to support!" (emphasis added).

"The oath of office, too, imposed by the legislature [See: The Act of Congress evidenced at 28 U.S.C. §453, Oaths of Justices and Judges], is completely demonstrative of the legislative opinion on this subject. It is in these words: "I do solemnly swear that I will administer justice without respect to persons, and do equal right to the poor and to the rich; and that I will faithfully and impartially discharge all the duties incumbent upon me as, according to the best of my abilities and understanding, agreeable to the best of my abilities and the laws of the United States." (emphasis added).

"Why does a judge swear to discharge his duties agreeably to the Constitution of the United States, if that Constitution forms no rule for his government [Judicial Conduct]? If it is closed upon him, and cannot be inspected by him?" (emphasis added).

"It is also not entirely unworthy of observation, that in
declaring  what shall be the supreme law of the land, the
Constitution itself is first mentioned; and not the laws of the
United States generally, but those only which shall be made in
pursuance to the Constitution, have that rank."  [See: Article I,
Section 8, Clause 18: Laws made to Carry into Execution
Constitutional Powers vested by the Constitution in the Federal
Government, are the only Laws pursuant to the Constitution].
(emphasis added).

"Thus, the particular phraseology of the Constitution of the
United States confirms and strengthens the principle, supposed
to be essential to all written constitutions, that a law
repugnant to the Constitution is void; and the courts, as well
as other departments, are bound by that instrument."

23. At no point do the decisions  in [Marbury v. Madison] even claim that courts have the power to detain citizens based simply upon "case law" or that case precedents are the Supreme Law. Judge-created case "law" simply has no binding weight. In fact, [Kuchner v. Schweiker, 717 F. 2d 813, 814, (3rd Cir. 1983)] demonstrates that Federal courts may override case "law." That fact should be contrasted with the binding oaths all officers take to support the "Supreme Law." Therefore, case precedent simply cannot be law. However, it was utilized against the plaintiff in this case as such, resulting in an evident due-process violation.

24. The practice of intentionally misconstruing the law by improperly isolating elements from it, out of context, can create a false impression of unlimited governmental power. As with [Article I, section 8, clause 18] stating, "Congress shall have the Power...to make all Laws which shall be necessary and proper..." being rendered to  mean "unlimited congressional legislative power," and clarified elsewhere in this suit, so as [Marbury v. Madison] been misunderstood to allow the insurgency of the Constitution. However, no evidence existed to allow the judge in the plaintiff's criminal case to claim lawful delegation of legislative power. Furthermore, no evidence exists to allow the defendants to claim unqualified: executive, territorial, legislative, judicial, and criminal jurisdiction over the plaintiff. Therefore, all: orders, judgments, rulings, and decrees in the petitioner's criminal proceedings are null and void.

25. As "case precedent" is not law in any way, it cannot be any form of consideration for the plaintiff's detention. Therefore, only the indisputable facts and documentary evidence that the petitioner presents here stand for consideration. As such, he is unequivocally entitled to relief.

## XVI . INCENTIVE to INCARCERATE the PETITIONER ILLEGALLY

1. The aforementioned jurisdictional violations did not occur simply out of oversight or accident. The petitioner claims that the respondents are subjecting the petitioner to unlawful detention in violation of the Constitution entitling the petitioner to relief. That is due to their - in addition to the judge presiding over the case, the prosecutor, the defense attorney(s), and all other court functionaries - incentives to incarcerate the petitioner irrespective of legality. The reasons for that are multiple, ultimately returning to their profit and gain as long as the petitioner is detained. That creates an unconstitutional conflict of interest, which, not only violates his due-process rights, but also mandatorily disqualifies all the aforementioned government agents from continuing to detain the plaintiff.

2. Many personal incentives exist for the defendants and the other aforementioned government agents to have the plaintiff detained irrespective of legality. The plaintiff will discuss a primary incentive: their interest in the plaintiff's "Judgment bond." When the plaintiff was judged and "committed," meaning detained, a financial bond was issued. A bond is a certificate of a written agreement issued by the government which promises to repay money borrowed at a fixed rate of interest after a stated period of time, sometimes with conditions of certain objectives to be completed. The plaintiff's penal-judgment bond pays: dividends, annuities, and residuals to the: judge, prosecutor, defense attorney, all other court functionaries in his case, and the defendants. This provides financial profit to those involved in the petitioner's "conviction" and incarceration.

3. The respondents engaged in a violation of the plaintiff's constitutional rights by detaining him while knowing of the true "Supreme Law of the Land" and their personal conflicts of interest regarding applying it. They entered the sovereign territory of a foreign State outside all Federal territory and jurisdiction, fabricated a criminal case, and arrested him without any true-bill documentation - all under the others of a District judge with a personal vested interest in his detention. The defense attorney of record never disclosed to the petitioner that the provisions of [Federal Rule of Criminal Procedure 11(c)(1)(C)] bound the presiding judge over his case to the exact terms of an agreed-upon plea agreement.
     orders

4. Irrespective of plea, the "guilty" verdict in the plaintiff's case imposed not only a sentence of imprisonment and a fine. It also validated a "penal judgment bond." The plaintiff in the petitioner's criminal case, the UNITED STATES of AMERICA, became a "judgment"-creditor upon the petitioner's "conviction." The defendant in that case, the petitioner in this one, became a "judgment"-debtor - despite duly paying his court imposed fines. All parties working for the UNITED STATES in the petitioner's criminal case, in particular the court functionaries and the defendants, all became creditors to the petitioner's unannounced financial "debt." As the petitioner's sentence was in excess of three-hundred and sixty-five (365) days, a security in favor of the United States Federal government was instantly issued.

5. That security was established as a surety and a collateralized bond. A surety is a security against loss, a guarantee that a promise will be fulfilled, and, in this case, an agreement that the petitioner became a ward of the United States. Hereinafter, it will be referred to as the petitioner's "penal-judgment bond." The bond indicated a particular "penal amount" granting it monetary value proportionate to the petitioner's length of sentence. That monetary value was validated through a surety company and clearing houses, such as Brown Brothers Harriman, the Trust Company owned in Delaware. Brown Brothers Harriman Co. is a wholly-owned subsidiary of Brown Brothers Harriman, Incorporated. Brown Brothers Harriman, one of the largest financial companies in the United States, cleared the penal-judgment bond and then bundled it in a marketable fund.

6. The marketable fund containing the petitioner's penal-judgment bond was placed on sale on a public exchange by Deutsche Bank, GmbH. It was marketed by the company Fidelity, which acted as the marketing agent for the fund. The United States Department of the Treasury retains the CUSIP number of the plaintiff's penal-judgment bond for internal monitoring, and would not divulge it regardless of the plaintiff's attempts. The sentencing judge on the plaintiff's criminal case remains the bond's administrator while the court's attorneys are its' fiduciaries. A fiduciary is a person entrusted with something of monetary value, being the plaintiff in this scenario.

7. The plaintiff remains the collateral against his penal-judgment bond. A collateral asset is something offered to a creditor as a security against a loan. In this instance, the loan is encompassed in the bond. As a result, the petitioner's detention is a revenue source for the respondents - creating an unconstitutional conflict of interest and explaining the underlying cause of his due-process being totally dissolved as demonstrated in "Part II" of this writ. The penal-judgment bond was issued in the plaintiff's name without his knowledge, consent, or authorization. To avoid a surety requirement in order to guarantee the plaintiff's penal-judgment bond, issued as a direct result of his detention as signified by the "Judgment and Commitment," the plaintiff was

remanded to the custody of the defendants. He was housed in a Federal Bureau of Prisons facility under the direct authority of the respondents. This renders him collateral for the penal-judgment bond issued. As such, the bond is a negotiable security instrument in favor of the plaintiff in the relevant criminal case: the UNITED STATES of AMERICA.

8. After being remanded to the custody of the defendants, the plaintiff's penal-judgment bond was submitted to the bond market for monetary remuneration. The funds received from the sale of the penal-judgment bond bundle which included the plaintiff's bond was then deposited in an hedge fund for investment purposes. The defendants have a direct monetary interest in the plaintiff's provably illegal detention. However, this incentive would represent a due-process violation even if it were the only jurisdictional, material, legal, or factual issue in favor of the plaintiff.

9. Based on the number of months imposed as a sentence upon the plaintiff, the court functionaries and the defendants receive payments of dividends, annuities, and/or residuals - or a combination of those. They continue to receive them either directly or indirectly, as offsets against accounts established for that purpose by the Treasury Department or pensions and retirement accounts. The court functionaries and defendants also profit through interests in specific non-governmental organizations (NGOs) to which the plaintiff's bond contributes. The financial structure of this scheme is quite complex and intricate.

11. The defendants and the court functionaries will continue to profit from the plaintiff's penal-judgment bond unless he has his criminal record totally expunged, an unlikely prospect, or dies. The judge in his case was incentivized to over-sentence the plaintiff in pursuit of a particular monetary bonus he would receive when his total imposed sentences upon all "convicts" exceeds one-million (1,000,000) years. The plaintiff was denied any disclosure that all parties, besides him, would receive personal benefits were he incarcerated and that that benefit was increased proportionately with the length of incarceration.

12. In addition to the District Judge; officers of the Executive department/branch, including the respondents, the sitting USAG at the time of the plaintiff's criminal case, the detaining USAG, the prosecutors, the defense attorney(s), and all other court functionaries, also receive collateral benefits as a result of the issuance of the plaintiff's penal-judgment bond. The Federal Reserve system also receives additional financial benefits from the plaintiff's bond. It multiplied the value of the penal-judgment bundled fund in which the plaintiff's bond is held for the purpose of "benefitting humanitarian relief programs," in reference to the petitioner being incarcerated. The fund was thereby enhanced in value then moved through the World Bank with funding provided by the International Monetary Fund.

13. All of this was ostensibly done to "reduce the balance of payment deficits or foreign trade deficits." It guaranteed that the plaintiff's detention would illegally benefit the Federal Reserve. Under [28 USC section 455(b)(4)] and [28 USC (Appendix) CANON 3(C)(1)(c)], this scheme warranted the automatic disqualification of the District court's jurisdiction, the presiding judge, the prosecutor, and the defense attorney from the plaintiff's criminal proceedings. [Section 455(b)(4)] states, to wit,

"(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality may reasonably be questioned. ...

(b) He shall also disqualify himself in the following circumstances:

(4) He knows that he, individually or as a fiduciary, or his spouse or a minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."

All the aforementioned were mandatorily disqualified from accepting jurisdiction or authority over the plaintiff's criminal case and detention. As such, all subsequent proceedings, including that detention, are fundamentally void.

14. They had no authority to even summon a grand-jury, not withstanding the myriad other defects in the plaintiff's detention. [18 USC ch. 11] clearly describes the invalidity of proceedings based upon conflicts of interest. The plaintiff's inherent protected rights were violated without due authority, jurisdiction, or process - for various forms of personal gain in addition to the financial benefits of his penal-judgment bond.

15. The defendants have detained the petitioner illegally since his arrest till this day. They are unable to prove by documentary evidence that they did not possess conflicts of interest. The plaintiff evidences through material facts that they did. As a result, the defendants had no authority or jurisdiction to detain the plaintiff. He is entitled to relief.

PART III

XVII . VERIFIED MATERIAL FACTS STATEMENT

1. The following material facts supplement the plaintiff-petitioner's claim statements in "Part II" of this writ. The petitioner hereby affirms and declares under penalty of perjury, pursuant to [28 USC section 1746], that the following facts are true and correct to the best of his: personal knowledge, understanding, and belief. They are his free act and deed. He is in proper person, of maturity, sound mind, and competent to testify.

a) FACTS PERTAINING to SECTION XII .

1. The petitioner, after due attempts and exertion of resources, can find no evidence whatsoever of any provision of the [United States Constitution] at [Article II] or elsewhere, vesting anyone, besides the duly-elected President of the United States, with inherent executive power.

2. The petitioner does find that the provisions of the [Tenth Amendment] and [Article I, section 8, clause 18] limit the scope and purpose of Congressional legislative powers solely to implementation of [Article I, section 8, clauses 1-17] in Congress and the other powers vested by the Constitution in the Federal government. This includes: the president, legislature, and judiciary. The plaintiff can find no evidence to the contrary.

3. The petitioner finds that the Congressional acts as published in [3 USC], [5 USC section 101], and elsewhere, as pertain to the executive branch, exclusively implement executive power only in the President. He can find no evidence to the contrary.

4. The petitioner can find no evidence of any constitutional provision vesting Congress with the power to establish executive sub-branches or departments, independent of the Executive branch establish by [Article II] and the President. Furthermore, the petitioner can find no evidence of any constitutional provision vesting Congress with power to establish Department Heads for the executive branch and vest them with independent executive power, not directly delegated by the Executive branch and the President - thereby subjecting the President to the authority of such department heads, as per [5 USC section 101].

5. The petitioner does find that all [Article II] powers vested by the Constitution - carried into implementation by [3 USC], [5 USC section 101], and elsewhere - as pertains to the executive branch and the Department of Justice at [28 USC part II] and, specifically, [28 USC section 501] are dormant. They remain dormant until the sitting President issues a written "Delegation Order," with the consent of the Senate, and thereafter publishing it in the Federal Register. That order is the only means by which [Article II] power may be delegated. The petitioner can find no evidence to the contrary.

6. The petitioner finds that detaining accused or "convicted" citizens is an exercise in executive power. The petitioner finds that, unless the President issued such a written "Delegation Order" for the purpose of delegating his exclusive executive powers, with congressional implementation as per [28 USC part II], with regards to the Executive sub-branch the "Department of Justice" and its' head (the United States Attorney General at the time of the plaintiff's detention), that the defendants lack any authority as to executive power whatsoever. He can find no evidence to the contrary.

7. The petitioner find that, unless the President issued such an "Order," that the defendants lacked any authority to enforce executive power or jurisdiction over the petitioner. That included the functions specified in [28 USC sections 514-520] pertaining to the US Attorney General to act through the defendants. As such, the petitioner finds that the respondents had no authority to subject the petitioner to: investigation, criminal complaint, indictment, arrest, prosecution, or detention. He can find no evidence to the contrary.

8. The petitioner can find no evidence of any written "Delegation Order" permitting the defendants to act with [Article II] executive power. No evidence exists to substantiate the legality of the plaintiff's detention or to defeat the presumption of his actual innocence. The petitioner finds that the defendants are subjecting him to illegal incarceration. He can find no evidence to the contrary.

b) FACTS PERTAINING to SECTION XIII .

1. The petitioner, after due attempt and exhaustion of resources, cannot find any evidence to support that the defendants had the requisite: unlimited, extraterritorial, legislative, judicial, executive, and criminal authority to apply the plaintiff's Federal

criminal statute of "conviction" over the entirety of his residential State.

2. The petitioner does find that the [Constitution Article I, section 8, clause 17], [Tenth Amendment], [18 USC section 7], [4 USC section 110(e)], and [40 USC section 3112] limit Federal jurisdiction exclusively to the Federal: geographical seat of government (Washington, DC), territories, commonwealths, insular possessions, and enclaves. The petitioner does find that he did not commit the instant conduct deemed an "infraction" on any of the aforementioned Federal areas. He can find no evidence to the contrary.

3. The petitioner can find no evidence of constitutional provisions granting the defendants jurisdictional authority beyond those Federal areas. He finds that, in the absence of such evidence, the defendants failed to prove their claim to jurisdiction or overcome the presumption of the petitioner's actual innocence. Therefore, the plaintiff finds that the defendants are subjecting him to illegal incarceration. He can find no evidence to the contrary.

c) FACTS PERTAINING to SECTION XIV .

1. The petitioner, after due attempt and exertion of resources, cannot find any evidence proving that he was detained with the requisite subject-matter jurisdiction. He cannot find the documents validating the proceedings of the court or any indication that those proceedings occurred. He cannot find any evidence that the "indictment(s)" used to detain him are anything more than information filings, as no evidence exists of a sworn grand-jury duly impaneled to validate an indictment. He does find that information filings do not have the same charging or detaining functions as an indictment. He can find no evidence to the contrary.

2. The petitioner finds that the seminal documents used to justify his detention simply do not exist or exist in a manner inconsistent with those laws derived from the Constitution. He also finds that the grand-jury foreperson never signed the indictment of his "conviction." He can find no evidence to the contrary.

3. The petitioner can find no evidence or indication that a grand-jury hearing ever occurred. He does find that an information filing alone is no basis to detain, judge, sentence, or commit a citizen to custody. He finds that the defendants lacked an "Indictment Waiver" filed in open court - the only means by which the indictment process may be circumvented. He cannot find a colloquy of indictment-waiver. He cannot find any evidence to the contrary.

4. The petitioner cannot find true-bill versions of: any indictments upon which his detention is based, duly-endorsed by their grand-jury foreperson and United States Attorney; colloquies of indictment-waivers in open court; an arrest warrant; an affidavit of criminal complaint; a complaint summons; a letter of concurrence certificate; an affidavit of probable cause hearing; grand-jury transcripts, ballot, and/or record for inspection. He does find that he was legally entitled to inspect all of these documents. He can find no evidence to the contrary.

5. The petitioner finds that the lack of those documents' furnishing to him deprived him of his constitutional right to a vigorous, well-informed, defense and represent a fundamental violation of due-process - regardless of their existence at this stage. The petitioner also finds that inability to produce those documents leads to a failure to overcome the presumption of irregularity, a second due-process violation. He can find no evidence to the contrary.

6. The petitioner finds that the defendants are subjecting him to constitutionally unlawful detention. He can find no evidence to the contrary.

d) FACTS PERTAINING to SECTION XV .

1. The petitioner, after due attempts and exertion of resources, finds that his detention is based, to a significant degree, upon the rulings derived from "case precedent." However, the petitioner can find no evidence that those involved in his "criminal case" had/have the authority or duty to rely upon or utilize in any sense "case law" or "case precedent" as Supreme Law. By utilizing it as Supreme Law, and "controlling law," they superseded the Constitution, United States Code, and the Code of Federal Regulations.

2. The petitioner can find no evidence that the Constitution vested the legislature or judiciary with any power to create a parallel "judicial Constitution" or to engage in "judicial legislation" by: dicta, decree, ruling or judgment. He can find no evidence that any judges': rulings, decrees, orders, or judgments, are binding upon any other party than the litigants in the particular action to which those are issued. The petitioner cannot find any evidence of legal liability, formal, or informal reprimand for non-compliance with "case law."

3. The petitioner does find that the defendants and court functionaries had the non-discretionary duty to rely exclusively on the Constitution and laws derived therefrom with regards to the petitioner, his case, and his detention. He also finds that they were obligated to adjudicate and decide to detain him only on the basis of the Constitution, laws derived therefrom, jurisdictional facts, and material facts. He can find no evidence to the contrary.

4. The petitioner finds that the defendants and court functionaries relied upon "case law" as Supreme controlling law to supersede the unconstitutionality of detaining the petitioner, their lack of jurisdictional authority, and the presumption of his actual innocence. The petitioner finds that the defendants detain him illegally. He can find no evidence to the contrary.

e) FACTS PERTAINING to SECTION XVI .

1. The petitioner finds, after due attempt and exhaustion of resources, that he was: investigated, detained, prosecuted, defended, tried, judged, sentenced, committed, and detain for: the profit and gain of the defendants and all those involved in his "criminal case," to the petitioner's exclusion. That included the issuance of a penal-judgment bond, as his sentence exceeded 365 days (one year). The profiteers continue to receive dividends, annuities, and/or residuals as a result of the plaintiff's ongoing detention. He can find no evidence to the contrary.

2. The petitioner finds that all involved parties were subject to immediate mandatory disqualification as per [28 USC section 455 (b)(4)] and [28 USC CANON 3(C)(1)(c)]. They had absolutely no authority to detain the plaintiff. The petitioner finds that the respondents are subjecting him to unlawful detention, never overcoming the presumption of his actual innocence or providing the requisite evidence of jurisdictional authority to detain him. He can find no evidence to the contrary.

XVIII. PRESUMPTION of the PETITIONER'S ACTUAL INNOCENCE

1. The respondents are subjecting the petitioner to unlawful detention in violation of the: Constitution, laws, and/or treaties of the United States - thereby entitling the petitioner to remedy and relief. That is so due to the fact that the respondents and their predecessors have failed to overcome the presumption of actual innocence, which all people are entitled to, pertaining to the petitioner's detention. They failed to prove the fundamental prerequisites underlying valid detentions. The respondents also failed to overcome the presumption at law that they lacked the authority or jurisdiction to detain the petitioner. Finally, they failed to exonerate themselves from conflicts of interest.

2. It is a maxim of law that officers, such as the defendants, are under the presumption of lacking authority to accept jurisdiction and that the plaintiff in such a case, the UNITED STATES of AMERICA in the preponderant case, has the sole burden to prove, beyond reasonable doubt, its' claim of jurisdiction. The defendants were also required to act only without any conflict of interest. Defeat of these elements is required to overcome the "presumption of actual innocence" and allow for a person to be detained. Without these elements being defeated and all other elements of a criminal case to be proven against a defendant, by admissible evidence, then an accused may not be detained. None of this has occurred with regards to the plaintiff in this instant writ and he has endeavored to a considerable degree in order to pry proof from the defendants - despite him having no legal obligation to do so.

3. These requirements are safeguards of the constitutional guarantee that "[n]o person shall...be deprived of life, liberty, or property, without Due Process of Law... ." [United States v. Hills, 75 MJ 350, (CAAF 2016)] states that the foundational tenet of the [US Constitution Fifth Amendment]'s due-process clause is: that the accused has the absolute right to be initially presumed actual innocent of all accusations until the government individually proves every element. Otherwise, he may not be detained. In [Kaley v. United States, 571 US 320, 134 S. Ct. 1090, 188 L. Ed. 2d 46, (2014)] Chief Justice Roberts, Justices Bryer and Sotomayor, dissented,

"United States v. Hills, 75 MJ 350, 2016 CAAF LEXIS 512 (CAAF 2016) (Foundational tenets of Due Process Clause of Fifth Amendment to the United States Constitution is that accused is presumed innocent until proven guilty, and accused has absolute right to presumption of [actual] innocence until Government has proven every element of every offense beyond reasonable doubt, and members of court-martial panel may only determine that accused is guilty if Government has met that burden) (emphasis added).

In Kaley v. United States, 571 U.S. 320, 134 S.Ct. 1090, 188 L.Ed.2d 46, 2014 U.S. LEXIS 1634 (2014) the Supreme Court stated in Chief Justice Roberts' Dissent along with Justice Breyer and Justice Sotomayor: "The issues presented here implicate some of the most fundamental precepts underlying the American criminal justice system.  A person accused by the United States of committing a crime is presumed [actually] innocent until proved guilty beyond a reasonable doubt.  But he faces a foe of poweful might and vast resources, intent on seeing him behind bars.  That individual has the right to choose the advocate he believes will most ably defend his liberty ..." (emphasis added).

In Engle v. Isaac, 456 U.S. 107, 111, 102 S.Ct. 1558, 71 L.Ed.2d 782, rehearing denied 102 S.Ct. 2286, 73 L.Ed.1296, and rehearing denied 102 S.Ct. 2976, 73 L.Ed.2d 1361 (1982), the Supreme Court stated: "Every person accused of an offense is presumed [actually] innocent until proven guilty beyond a reasonable doubt, and the burden of proof is upon the prosecution." (emphasis added).

See also: Yates v. Jones National Bank, 206 U.S. 158, 27 S.Ct. 638, 51 L.Ed 1002 (1907) ("No principle of law is better established, recognized, and enforced than that all men are presumed to be [actually] innocent until proven guilty."). (emphasis added).

Furthermore, in Betterman v. Montana, 136 S.Ct 1609, 1617 194 L.Ed.2d 723, 2016 U.S. LEXIS 3349 (2016), the Supreme Court stated: "[T]he accused is sheilded by the presumption of [actual] innocence, the bedrock[,] axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." (emphasis added).

Finally, in the Dissenting Opinion of Judge Edwards of the D.C. Circuit in United States v. Simmons, 670 F.2d 365, 373, 216 U.S. App. D.C. 207, 1982 U.S. App. LEXIS 21953 (D.C. Cir. 1982), the Court stated: "We ascribe so much importance to our legal safeguards because, in our country -- unlike some others in the world -- we assume that a person is [actually] innocent until proven guilty, and we guarantee a full and fair trial in any criminal prosecution. When these assumptions and guarantees are abandoned or abrogated by heavy-handed prosecutors, we risk the introduction of totalitarianism into our judicial process." (emphasis added).

10. The record of the District Court, the Federal Register, and numerous attempts to obtain the information, all evidence that, at no point, did the plaintiff in the petitioner's criminal case have any basis to prove its' claims to authority nor jurisdiction. It had no right to detain the petitioner under the President's executive authority. The defendants did not have the requisite jurisdictional authority to enter the petitioner's residential State and subject a member of that State's sovereign body politic, the petitioner, to detention. It did not have the authority to enforce the state of "conviction" over the entire territory of that unconsenting State.

11. The defendants did not try nor detain the petitioner under any semblance of due-process with true-bill documentation. The defendants had no authority to detain the petitioner under the pretenses of "case law" nor a "judicial constitution" carrying comparable or more weight than and supplanting the Constitution - all the while being mere unofficial opinions. All of these egregious violations occurred as the defendants were, and remain, incentivized to detain the plaintiff for as long as possible - irrespective of legality, due to their own personal profit and gain.

12. As such, the petitioner was presumed absolutely guilty and was required to somehow prove his innocence, beyond a reasonable doubt. However, the law proves that the defendants and court functionaries had no: authority to subject the petitioner to the application of his criminal statute of "conviction," abduct him from his sovereign residential State, subject him to a faulty indictment, prosecution, detention, or any of the subsequent occurrences. They continue to lack authority to subject him to ongoing incarceration. The entirety of the proceedings were and are totally void. The value of the merits of their accusations are totally irrelevant and essentially meaningless.

13. The petitioner is entitled to relief.